[No. D007331. Fourth Dist., Div. One. Aug. 28, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
GILBERT CORONA et al., Defendants and Appellants.

[Opinion certified for partial publication.[1]]

[1]Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II A, B, C 1 and 2, and D.

**COUNSEL**

Patrick J. Hennessey, Jr., and William R. Durr, Jr., under appointments by the Court of Appeal, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Rudolf Corona, Jr., and Maxine P. Cutler, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BENKE, J.**—Gilbert Corona and Jimmy Gonzalez were each charged with two counts of assault by force likely to produce great bodily injury (Pen. Code,[2] § 245, subd. (a)(1)) and two counts of battery with serious injury (§ 243). As to each defendant an infliction of great bodily injury allegation (§ 12022.7) was added to the assault counts. These charges arose from assaults on two victims. Corona was found guilty of the charges as to the first victim and not guilty of the charges as to the second. Gonzalez was found guilty of the charges as to the second victim and not guilty as to the first.

Sentenced to terms in prison, both defendants argue the trial court erred in denying their motion to sever. Corona further argues the evidence was insufficient to support his conviction. Gonzalez argues the trial court erred in instructing the jury before argument and abused its discretion in denying him probation. We find these arguments without merit and affirm.

---

[2] All statutory references are to the Penal Code unless otherwise specified.

# I

## FACTS

A. *The People's Case*

On April 3, 1987, at approximately 10 p.m., Kim Schildmeyer drove to the 7-Eleven store at Woodlawn and "H" Streets in Chula Vista. As she parked she noticed five to seven Hispanic men in their late teens or early 20's walk toward her car. Some of the men stood next to the car, one leaned against the hood and one, later identified as appellant Gonzalez, sat on the hood. Gonzalez looked into the car and waved in a manner connoting neither friendliness nor aggression but acknowledgment. After a few minutes the men walked away. Kim got out of her car and went into the store.

Around the time Kim arrived at the store, Daniel Florko and Michael Golden drove into the parking lot in Golden's truck. The men had been drinking at a bar and stopped to buy beer. Golden went into the store while Florko waited in the truck. Florko noticed six to eight Hispanic men on the sidewalk near the store. Three of the men walked up to the truck while the others continued toward the store. One of the men who approached the truck asked Florko if he wanted to buy drugs. Florko said no. The man asked if Florko had a problem. Florko stated he did not and asked the man if he had a problem. The man struck him in the face. Florko was struck several more times and then was dragged from the truck. As Florko lay on the ground, he was hit and kicked. One man, later identified as Gonzalez, jabbed him repeatedly with a pipe.

As Schildmeyer waited in the store, she heard a loud noise and looked out the window. She saw Florko being pulled from the truck and beaten. She recognized the men around Florko as the same men who had earlier approached her car. Gonzalez was convicted of the assault on Florko.

As Golden left the store, he saw Florko being beaten. Golden yelled and ran towards his truck. A fight began between Golden and two or three of the men. Golden was hit, fell to the ground and was hit and kicked repeatedly. Finally the men departed. Golden later identified Corona and Gonzalez as two of the men who attacked him and stated he saw Gonzalez holding a length of conduit.

Gabriel Martinez was a clerk at the 7-Eleven store the night of the assault. Martinez saw Golden assaulted by four men. Martinez had seen Gonzalez in the store about a half-hour before the assault but was unsure if he was one of the men who attacked Golden. Martinez was certain,

however, Corona (whom he had seen in the past) was one of the men involved and stated he saw Corona kicking Golden and throwing unopened beer cans at him. Corona was convicted of the assault on Golden.

Both victims suffered serious injuries. Golden's jaw was severely swollen. There were cuts on his arms and bruises on his neck, head, and back. His ribs were sore for two weeks. Golden also suffered a cut under his chin which was closed with a butterfly bandage and a cut above his right eye which required eight or ten stitches.

Florko suffered more serious injuries. He had a broken nose and a fracture of the orbital floor of the left eye. He also suffered a "C" shape cut on his forehead which required 11 to 12 stitches to close. On his chest, neck and shoulder he had oval bruises which could have been caused by the jabbing of a pipe.

B. *The Defense*

The defense offered the testimony of Dr. Thomas MacSeiden, a psychologist, who discussed certain theories concerning the imperfection of human perception and memory.

More specifically to this case, Corona testified he had been at the 7-Eleven earlier on the evening of the assault. As the evening turned cold, Corona decided to go to the home of his friend John Romero to borrow a jacket. Corona's friend Michael Root and Root's girlfriend Sophia Bravo were sitting at the house in Root's car. Corona borrowed a sweater and baseball cap from Romero and got a ride back to the 7-Eleven with Root and Bravo. As the trio returned to the 7-Eleven, the assault was already in progress. Corona and Bravo got out of the car, watched the incident for about a minute and then got into the car and departed. Corona stated he took no part in either assault.

Both Michael Root and Sophia Bravo testified Corona's account of the events that evening was accurate. Each stated they had driven to the 7-Eleven, witnessed the altercation and departed. Both agreed Corona was not involved in either assault.

Hector Navarette testified that after purchasing beer at the 7-Eleven, he observed two persons fighting with another person in a truck. As he was watching the fight he was hit from behind and got involved in a second altercation. Navarrette stated he saw Corona get in a car and depart. Corona had not been involved in either fight.

II-A.—C.2.*

. . . . . . . . . . . . . . . . . . . . .

3. *Personal Infliction of Great Bodily Injury*

■ Citing *People* v. *Cole* (1982) 31 Cal.3d 568 [183 Cal.Rptr. 350, 645 P.2d 1182], Corona argues even if the evidence is sufficient to convict him of assaulting Golden and even if the injuries suffered were great bodily injury, there is no evidence he *personally* inflicted any particular injury and thus the section 12022.7 finding could not properly be returned against him.

Section 12022.7 states: "Any person who, with the intent to inflict such injury, *personally* inflicts great bodily injury . . . shall . . . be punished by an additional term of three years." (Italics added.) In *Cole* one robber ordered another to kill their victim. He tried. The victim suffered great bodily injury and the question for the court was whether the robber who ordered the physical assault, but who did not physically participate in it, was liable for the section 12022.7 enhancement.

The court in *Cole* believed the language of the section was clear, "the individual accused of inflicting great bodily injury must be the person who directly acted to cause the injury." (31 Cal.3d at p. 572.)

The court found no reason to depart from the plain language of the section. The purpose of the section was to deter the infliction of great bodily injury. That goal could rationally be accomplished by limiting the scope of the section to the person who himself inflicts the injury because each member of a criminal undertaking will know that regardless of the urging of others, if he inflicts great injury, he alone will be punished more severely. (*People* v. *Cole, supra,* 31 Cal.3d at pp. 572-573.)

In discussing the argument that in a moral sense one who directs an assault is as culpable as the actor himself, the court noted that expanding the scope of section 12022.7 to persons who directed the infliction of injury would pose difficult questions in future cases. The court then stated: "In any event, the distinction between the person who actually inflicts the injury and the person who does not, is clearly consonant with the legislative purpose, and cannot be described as leading to absurd consequences." (*People* v. *Cole, supra,* 31 Cal.3d at p. 573.)

---

*See footnote, *ante,* page 589.

While *Cole* has logical application with regard to the section 12022.7 culpability of an aider and abettor who strikes no blow, it makes no sense when applied to a group pummeling. Central to *Cole* is the conclusion that the deterrent intent of section 12022.7 is served by directing its increased punishment at the actor who ultimately inflicts the injury. Applying *Cole* uncritically in the context of this case does not create a deterrent effect. Rather it would lead to the insulation of individuals who engage in group beatings. Only those whose foot could be traced to a particular kick, whose fist could be patterned to a certain blow or whose weapon could be aligned with a visible injury would be punished. The more severe the beating, the more difficult would be the tracing of culpability. Thus, while it is true the evidence fails to directly attribute any particular injury suffered by Golden to any particular blow struck by appellant, still, the blows were delivered, Corona joined in that delivery and the victim suffered great bodily injury.

The conclusion we reach is not without support. In *People* v. *Dominick* (1986) 182 Cal.App.3d 1174 [227 Cal.Rptr. 849], two men kidnapped a young woman and sexually assaulted her. Intent on eliminating their victim as a witness, one of the men grabbed her from behind and pulled her head back. The second man swung at her throat with a pole. The victim turned her head, was struck in the face but was still able to pull away. As she did so, she fell down a mountainside, breaking her shoulder. Believing the woman dead, the men departed. (*Id.* at pp. 1184-1185.)

The defendant who had held the victim while she was struck, argued, with regard to the injury inflicted, he was a mere aider and abettor and, pursuant to *Cole,* could not be punished for that injury. The court concluded that grabbing the victim so she could be struck made the defendant directly responsible for the broken shoulder she suffered in falling and thus subject to punishment under section 12022.7. (*People* v. *Dominick, supra,* 182 Cal.App.3d at pp. 1210-1211.)

We do not attempt to set forth a universally applicable test for when an individual ceases to be an accomplice and becomes a direct participant to the infliction of great bodily injury. We conclude only that when a defendant participates in a group beating and when it is not possible to determine which assailant inflicted which injuries, the defendant may be punished with a great bodily injury enhancement if his conduct was of a nature that it could have caused the great bodily injury suffered.

As we have noted, the evidence was sufficient to convict Corona of the assault on Golden. Moreover, the conduct of Corona during the attack was of a nature that it could have resulted in the injuries inflicted. The evidence

was therefore sufficient to support the finding he inflicted great bodily injury.

D.*

. . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Kremer, P. J., and Todd, J., concurred.

Appellants' petition for review by the Supreme Court was denied November 30, 1989.

---

*See footnote, *ante,* page 589.