[No. B068899. Second Dist., Div. Four. Aug. 17, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
CRUZ MAGANA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication with the exception of parts IV and VI.

**COUNSEL**

Diane E. Berley, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Sharon Wooden Richard and Lisa J. Brault, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**VOGEL (C. S.), J.—**

I

STATEMENT OF THE CASE

Following a jury trial, defendant Cruz Magana was found guilty of one count of first degree murder and two counts of attempted murder. The jury found true several enhancement allegations, including the allegations that as to the attempted murder counts, defendant personally inflicted great bodily injury upon the two victims. (Pen. Code, § 12022.7.) Sentenced to state prison to a total term of life plus 11 years, defendant appeals.

II

STATEMENT OF FACTS

The crimes arise out of a gang-motivated drive-by shooting. Defendant is a member of the Pomona 12th Street gang. Defendant's gang sought retaliation against the Cherryville gang because a member of the latter had killed the seven-year-old son of a 12th Street gang member. Using a stolen car, defendant, David Adame, and two unidentified individuals drove into the Cherryville section of Pomona during the late afternoon of April 26, 1990. A group of people were standing in front of the Gutierrez home. As the car passed the house, defendant, armed with a rifle or shotgun, and David Adame, armed with a handgun, jumped out of the vehicle and shot at the group, killing Jesus Gonzalez and seriously injuring David Godinez, Sr., and his infant son, David Godinez, Jr. Defendant and Adame returned to the car. As the car drove off, its occupants yelled: "12th Street."

Later that day, two eyewitnesses, Renee Gutierrez and Rosanna Cabrera, identified defendant as the shooter in a photo showup. (The two women subsequently identified him at a lineup, at the preliminary hearing, and at trial.)

The police arrested defendant the next morning. Defendant asked why he was being arrested and the police responded "for homicide." Defendant then stated: " 'It must have been the incident which occurred in Cherryville yesterday.' " In subsequent police interviews, defendant gave contradictory explanations for his actions on the day of the shooting.

At trial, defendant and his mother testified to an alibi defense.[1]

## III

### PROSECUTORIAL MISCONDUCT

### A. *Facts*

Defendant contends that the prosecutor engaged in prejudicial misconduct based upon the following events. During cross-examination of defendant, the prosecutor referred to letters defendant had written following the shooting. The letters had been recovered from their recipients and translated into English. Defendant had been provided with copies but had never moved to exclude the letters from evidence. The prosecutor asked defendant: "Isn't it true you told your home boys that if you were offered a good deal, you'd take it?" The court sustained defendant's objection to the question. The prosecutor represented that defendant had written in a letter: "F\*\*k the law and the hudas, Ralph, Sharks[2] are above the law, ese, well f\*\*k the law. He is safe. They will never be able to stop the crazy as Pomona 12th Street Gang. *If they give me a deal bargain of ten years, I'm going to take it*, so I might be gone on vacation for a while, Homes." (Italics added.)

The court concluded that the question constituted prosecutorial misconduct because it impermissibly sought to use plea bargain negotiations to prove guilt. The court denied defendant's motion for a mistrial but admonished the jury to disregard the question and its implications. Thereafter, the prosecutor did not return to the subject, either in questioning or argument. After the jury returned its guilty verdicts, defendant did not renew the claim of misconduct in a motion for a new trial although the court had earlier stated that it would give "serious consideration" to such a motion.

### B. *Discussion*

Defendant now maintains that the posing of the question constituted prejudicial prosecutorial misconduct. We disagree, finding instead that the question did not violate the statutory bar on the use of offers to plead guilty.

Evidence Code section 1153 provides, in pertinent part: "Evidence of a plea of guilty, later withdrawn, or of an offer to plead guilty to the crime charged or to any other crime, made by the defendant in a criminal action is

---

[1]Adame was tried separately.
[2]The 12th Street Gang is also referred to as Sharks.

inadmissible in any action . . . ."[3] The purpose of the statute is to promote the public interest by encouraging the parties to settle a criminal case without the necessity of a trial. (*People v. Hamilton* (1963) 60 Cal.2d 105, 114 [32 Cal.Rptr. 4, 383 P.2d 412].) "With judicial approval, plea bargaining has become an integral part of our criminal justice system. [Citation.] Plea bargains can be so frequently made because both sides benefit. Thus the system constitutes a standing invitation to talk, to explain, to bargain, and to admit." (*People v. Tanner* (1975) 45 Cal.App.3d 345, 352 [119 Cal.Rptr. 407].) Accordingly, courts have found that the statutory bar applies to an offer to plead guilty to a lesser offense made in an affidavit signed by the defendant and submitted to the trial court (*People v. Wilson* (1963) 60 Cal.2d 139, 154-156 [32 Cal.Rptr. 44, 383 P.2d 452]), a verbal offer made by the defendant to the prosecutor to plead guilty if assured of a life sentence (*People v. Hamilton, supra,* 60 Cal.2d at pp. 112-114), letters written by the defendant while awaiting trial to the deputy prosecutor in charge of his case and to the district attorney which discussed pending plea negotiations (*People v. Tanner, supra,* 45 Cal.App.3d at pp. 353-354), and a conversation between the accused and a deputy prosecutor in which the former attempted to exchange information in return for a jail sentence (*People v. Doran* (1972) 24 Cal.App.3d 316, 320-321 [100 Cal.Rptr. 886]).

However, the statutory bar applies only to statements made in the context of bona fide plea negotiations. For instance, in *People v. Sirhan* (1972) 7 Cal.3d 710 [102 Cal.Rptr. 385, 497 P.2d 1121], the defendant, in an angry outburst made during proceedings conducted outside the presence of the jury, stated he wanted to plead guilty to first degree murder because he had killed the victim with wilful and deliberate premeditation. The trial court declined the "offer." Our Supreme Court held that given that the obvious purpose of the statute is to promote settlements short of trial, evidence of this statement was admissible at the defendant's trial because the statement did not constitute a bona fide offer to plead guilty but instead was merely an outburst by an angry defendant. (*Id.* at pp. 745-746.)

A similar result followed in *People v. Posten* (1980) 108 Cal.App.3d 633 [166 Cal.Rptr. 661]. There, the defendant made offers to plead guilty to police officers who were bringing him to California to stand trial. The defendant urged his offers should have been excluded as being part of bona fide plea negotiations. The Court of Appeal rejected the contention. It

---

[3]In a similar vein, Penal Code section 1192.4 provides: "If the defendant's plea of guilty pursuant to Section 1192.1 or 1192.2 is not accepted by the prosecuting attorney and approved by the court, the plea shall be deemed withdrawn and the defendant may then enter such plea or pleas as would otherwise have been available. The plea so withdrawn may not be received in evidence in any criminal, civil, or special action or proceeding of any nature, including proceedings before agencies, commissions, boards, and tribunals."

reasoned: "The offers were not made in the course of bona fide plea negotiations but were merely unsolicited admissions by [the defendant] without any understanding that they would be inadmissible. They do not come within the protection of [Evid. Code, § 1153 and Pen. Code, § 1192.4]." (*Id.* at p. 648.)

From these precedents, we distill the following principles. Bona fide plea negotiations include statements made to the trial court and to the prosecuting attorney because those are the participants in a plea bargain. (But see *People* v. *Cummings* (1993) 4 Cal.4th 1233, 1316-1319 [18 Cal.Rptr.2d 796, 850 P.2d 1] [defendant's statements made in an interview with the prosecutor were not covered by Evidence Code section 1153 because the interview was given as a precondition to initiation of any plea bargain discussions].) On the other hand, bona fide plea negotiations do not include statements to transporting police officers or statements made in anger to the trial court. **(1b)** Viewed in that light, defendant's statement, contained in a letter to a fellow gang member, that he would accept a good deal if it were offered cannot be construed as a bona fide plea negotiation for the following reasons.

The prohibition in Evidence Code section 1153 on the use of offers to plead guilty and statements made attendant thereto helps to implement the sound public policy of encouraging settlement of criminal cases by encouraging candor in plea negotiations. (See *People* v. *Tanner*, *supra*, 45 Cal.App.3d at pp. 350-352.) The accused and defense counsel are assured that anything said will not be used against them if the negotiations are unsuccessful. However, there is no need to protect the defendant's voluntary disclosures about the bargaining process made to third persons uninvolved and unnecessary to the plea negotiations. Those communications are not part of the bona fide plea negotiations as they cannot be seen as an attempt to influence the court or the prosecutor to accept a particular offer. Thus, these statements are not embraced within the statutory prohibition.

Furthermore, it is apparent from the context in which defendant made the particular statement that it is really one of a braggadocio, not a statement by an individual seriously interested in a plea bargain. The trial court recognized this fact when it noted in its comments to counsel that defendant's hoped-for sentence was unreasonable in light of the severity of the pending charges. This conclusion is fortified by the fact that defendant's statements do not refer to any particular offer or phase in an ongoing negotiation. Although defendant testified at an Evidence Code section 402 hearing following counsel's objection to the prosecutor's use of the statement, defendant did not testify that he was involved in any plea bargain negotiations or that his comment in the letter referred to an offer he had made or was considering making, or had been made by the prosecutor.

In sum, we conclude that the trial court erred in concluding that the question was barred by Evidence Code section 1153.[4] The prosecutor, therefore, did not commit misconduct when he asked the question. Accordingly, there is no need to consider defendant's additional arguments that the court erred in denying his motion for a mistrial; that the court's admonition only "served to exacerbate the effect of the prosecutor's question"; and that reversal is warranted because "this case was closely-balanced."

## IV*

### INSTRUCTIONAL ERROR

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## V

### GREAT BODILY INJURY ENHANCEMENTS

A. *Factual and Procedural Background*

In regard to the charges of attempted murder of David Godinez, Sr., and David Godinez, Jr., the People alleged a sentencing enhancement based upon the provisions of Penal Code section 12022.7. The section provides, in pertinent part: "Any person who, with the intent to inflict such injury, *personally inflicts great bodily injury on any person* . . . in the commission . . . of a felony shall, in addition and consecutive to the punishment prescribed for the felony . . . be punished by an additional term of three years . . . ." (Italics added.)

In *People* v. *Cole* (1982) 31 Cal.3d 568 [183 Cal.Rptr. 350, 645 P.2d 1182], our Supreme Court reviewed the legislative history behind the 1977 amendment to Penal Code section 12022.7 and concluded that the enhancement applied only to those who directly commit the act which causes the physical injury to the victim. Thus, in the present case it was the People's burden to show that defendant personally inflicted great bodily injury upon the Godinezes. In that regard, Renee Gutierrez testified that defendant used a shotgun or rifle and that Adame used a handgun. Rosanna Cabrera testified that defendant used a "big . . . long gun" and that the other shooter used a handgun. Detective Terrio testified that identifiable bullets and spent cartridge casings were retrieved from the crime scene. A bullet removed from

---

[4]On this appeal, defendant has offered absolutely no authority to support his claim that the question was improper. Instead, he relies entirely on the trial court's conclusion that the prosecutor engaged in misconduct by posing the question.

*See footnote, *ante*, page 1371.

David Godinez, Jr., was introduced into evidence but no testimony was adduced as to its caliber. Similarly, the prosecution offered no evidence as to what caliber of bullet, if any, was removed from David Godinez, Sr.

On the first day of deliberations, the jury requested and received a readback of the "testimony of Det. Frank Terrio identifying calibre of People's Exhibit #23—Bullet Recovered from David Godinez Jr." However, the premise of the request was erroneous; neither Detective Terrio nor any other witness had identified the caliber of the bullet retrieved from the infant. The same day, the jury asked: "Where are the 25 cal casings identified as retrieved from People's #1 graph or picture." The court wrote back: "You have all admitted evidence."

On the second day of deliberations, the jury asked: " 'We, the jury in the above-entitled action request the following clarification of Penal Code section 12022.[7] as it applies to defendant Cruz Magana. Does the prosecution have to prove it was Magana's gun which fired the bullets which struck David Godinez, Senior, Junior? [¶] Is the absence of any such direct testimony or physical evidence in spite of his, Magana's, physical presence at the scene, without knowing which bullet struck the victim, justification for a guilty verdict on this charge?' "

The court communicated with counsel about this inquiry. Counsel agreed that the court should respond by giving three standard instructions, CALJIC Nos. 3.00, 3.01, and 3.02, on the criminal liability of an aider and abettor.[5]

The jury resumed deliberations and in 11 minutes, returned with its verdicts, which included the findings that defendant had personally inflicted great bodily injury upon the Godinezes.

---

[5]CALJIC No. 3.00 reads: "The persons concerned in the commission of a crime who are regarded by law as principals in the crime thus committed and equally guilty thereof include: [¶] 1. Those who directly and actively commit or attempt to commit the act constituting the crime, or [¶] 2. Those who aid and abet the commission of the crime."

CALJIC No. 3.01 reads: "A person aids and abets the commission of a crime when he or she, [¶] (1) with knowledge of the unlawful purpose of the perpetrator and [¶] (2) with the intent or purpose of committing, encouraging, or facilitating the commission of the crime, by act or advice aids, promotes, encourages or instigates the commission of the crime. [¶] A person who aids and abets the commission of a crime need not be personally present at the scene of the crime. [¶] Mere presence at the scene of a crime which does not itself assist the commission of the crime does not amount to aiding and abetting. [¶] Mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting."

CALJIC No. 3.02 reads: "One who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and probable consequences of any criminal act that he knowingly and intentionally aided and abetted. You must determine whether the defendant is guilty of the crime originally contemplated, and, if so, whether the crimes and allegations charged in Counts One, Two, and Three were a natural and probable consequence of such originally contemplated crime."

B. *Discussion*

 Defendant now urges that the court's submission of the three instructions about aiding and abetting were prejudicial error because the language of Penal Code section 12022.7 requires a finding of personal use but those instructions permitted the jury to find the enhancement allegations true based upon a theory of vicarious liability. The contention is well-founded.

The People acknowledge that *People v. Cole, supra,* 31 Cal.3d 568, requires that the accused personally inflict the injury upon the victim for the enhancement to be operative but urge that two subsequent cases which carved an exception to that holding are applicable. In *People v. Corona* (1989) 213 Cal.App.3d 589 [261 Cal.Rptr. 765] (review den.), a group of men attacked the victim, hitting and kicking him repeatedly. The victim sustained serious injuries. The defendant was convicted of assault and battery with a Penal Code section 12022.7 enhancement for great bodily injury. On appeal, the defendant urged that the enhancement could not stand because there was no evidence that the defendant personally inflicted any particular injury. The Court of Appeal disagreed and concluded that "when a defendant participates in a group beating and when it is not possible to determine which assailant inflicted which injuries, the defendant may be punished with a great bodily injury enhancement if his conduct was of a nature that it could have caused the great bodily injury suffered." (*Id.* at p. 594.) It reasoned that a literal application of *Cole's* holding "would lead to the insulation of individuals who engage in group beatings. Only those whose foot could be traced to a particular kick, whose fist could be patterned to a certain blow or whose weapon could be aligned with a visible injury would be punished. The more severe the beating, the more difficult would be the tracing of culpability." (*Ibid.*)

A similar analysis was applied to a drive-by shooting in *In re Sergio R.* (1991) 228 Cal.App.3d 588 [279 Cal.Rptr. 149]. There, several gang members, using two 12-gauge shotguns (*id.* at pp. 593 and 597), fired into a group of people, killing one and seriously injuring a second. The trial court found the Penal Code section 12022.7 allegation to be true. On appeal, the accused urged "that there was insufficient evidence to show that he personally inflicted great bodily injury or death on the victims. He claim[ed] that the evidence did not show that his discharge of the shotgun, which involved three rounds, as contrasted with the discharge of the shotgun of his fellow gang member, was the cause of the great bodily injury and death suffered by the victims." (*Id.* at p. 601.) Relying upon *People v. Corona, supra,* 213 Cal.App.3d 589, the court held the sustaining of the enhancement

allegation was proper because more than one assailant had discharged a firearm into the group and it was not possible to determine which assailant had inflicted the injuries although the conduct of each could have caused the injury.

■■■ *Corona* and *Sergio R.* are distinguishable from the case at bench. The analytic touchstone in each opinion was the impossibility of determining which injury the accused had actually inflicted. In *Corona,* no discrete injury could be traced to the defendant because he was in a group of men who had physically pummeled the victim. In *Sergio R.,* each assailant had fired the same type of weapon, a 12-gauge shotgun. However, in this action, the People could have proved which injuries defendant caused. Eyewitness testimony established that defendant and Adame used different weapons; defendant shot a rifle while Adame shot a handgun. As the police identified the different types of bullets and cartridges retrieved from the crime scene, the People, through expert testimony, could have opined which firearm discharged which bullet. A bullet was removed from one victim and introduced into evidence but its caliber was never identified. The jury recognized this gap in the evidence by asking whether the People had to prove that defendant had fired the bullets which shot the Godinezes, or establish that it was not possible to do so. The submission of instructions on the law of aiding and abetting was error given *People* v. *Cole, supra,* 31 Cal.3d 568,[6] and surely contributed to the jury's findings because after only 11 minutes of further deliberations, the jury returned with its verdicts. In any event, the record does not contain substantial evidence to sustain the required findings that defendant *personally* inflicted great bodily injury on the Godinezes. This failure of proof compels striking of the enhancements and the sentences imposed therefor.

## VI*

### CUSTODY CREDITS

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## VII

### DISPOSITION

The three-year enhancements imposed on counts 2 and 3 pursuant to Penal Code section 12202.7 are stricken, thereby reducing the sentence imposed

---

[6]The People concede that "the trial court may have technically been incorrect in instructing with aider and abettor instructions in response to the jury's question."
*See footnote, *ante*, page 1371.

from life plus eleven years to life plus five years. Additionally, the judgment is modified to reflect that defendant shall receive a total of 1134 days in custody credit. The trial court shall prepare and forward an amended abstract of judgment to the Department of Corrections reflecting these changes. In all other respects, the judgment is affirmed.

Woods (A. M.), P. J., and Epstein, J., concurred.