66 Cal.Rptr.3d 381 (2007)
155 Cal.App.4th 903
The PEOPLE, Plaintiff and Respondent,
v.
Guan Tyrone BROCK, Defendant and Appellant.
No. B179876.
Court of Appeal of California, Second District, Division Eight.
September 26, 2007.
*383 Karyn H. Bucur, under appointment by the Court of Appeal, Laguna Hills, for Defendant and Appellant.
Bill Lockyer, Edmund G. Brown Jr., Attorneys General, Robert R. Anderson, Dane R. Gillette, Chief Assistant Attorneys General, Pamela C. Hamanaka, Assistant Attorney General, Steven D. Matthews and Kyle S. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.
*382 FLIER, J.
The United States Supreme Court granted certiorari in this case and vacated the judgment, for further consideration in light of Cunningham v. California (2007) 549 U.S. ____, 127 S.Ct. 856, 166 L.Ed.2d 856 (Cunningham).
Appellant Guan Tyrone Brock escaped from a parole halfway house. He was sentenced to six years in prison for the crime of escape from custody, without force or violence. (Pen.Code, § 4530, subd. (b).)[1] His sentence was based on the upper term of three years, doubled for one prior "strike" conviction, under the Three Strikes law. His contentions are that (1) the trial court abused its discretion when it admitted a confession he made during plea negotiations at a pretrial proceeding; (2) his case must be remanded for resentencing, as he should have been charged under a more specific statute, which carried a lesser punishment; and (3) imposition of the upper term violated his right to trial by jury, as the Sixth and Fourteenth Amendments were interpreted in Blakely v. Washington (2004) 542 U.S.
296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (Blakely), because the aggravating factors were not found true by a jury.
On August 2, 2006, in a published opinion, we rejected the first and third issues, but modified appellant's conviction from subdivision (b) to subdivision (c) of section 4530. Our rejection of the Blakely issue was based on People v. Black (2005) 35 Cal.4th 1238, 29 Cal.Rptr.3d 740, 113 P.3d 534 (Black I), in which our Supreme Court held that Blakely did not apply to imposition of the upper term under California's Determinate Sentencing Law (DSL).
On January 22, 2007, the United States Supreme Court abrogated Black I in Cunningham, supra, ___ U.S. ___, 127 S.Ct. 856. Cunningham held that imposition of the upper term under the DSL violated the Sixth and Fourteenth Amendments, by placing sentence-elevating factfinding within the judge's province. (Cunningham, supra, at p. 860.)
On February 20, 2007, the United States Supreme Court granted certiorari in Black I and vacated the judgment, for further consideration in light of Cunningham. (Black v. California (2007) ___ U.S. ___, 127 S.Ct. 1210,167 L.Ed.2d 36.)
As indicated, this case was sent back to us in March 2007, for consideration in light of Cunningham.
In June 2007, both sides filed supplemental Cunningham briefing.
On July 19, 2007, the California Supreme Court explained the effect of Cunningham, in People v. Black (2007) 41 Cal.4th 799, 62 Cal.Rptr.3d 569, 161 P.3d 1130 (Black II), and People v. Sandoval (2007) 41 Cal.4th 825, 62 Cal.Rptr.3d 588, 161 P.3d 1146 (Sandoval). We are guided by those cases for the Blakely issue here. We take from our prior opinion the discussion *384 of the facts arid the two issues regarding guilt. We utilize new analysis of the sentencing issue, based on Cunningham and Black II. We conclude that the upper term was appropriate due to appellant's prior criminal record. The result is the same disposition as in our prior opinion.

FACTS

1. Prosecution Testimony
The Bridge Back Reentry Center (Bridge Back) is a privately owned residential work furlough program that contracts with the California Department of Corrections to provide services for prison inmates whose sentences are nearly completed. Bridge Back is designed to help prisoners reenter society by assisting them with job searches and related matters. Inmates are permitted to leave the facility to obtain identification cards, to look for employment, and to reestablish relationships with their families. They must sign out when they leave for an approved activity and sign in when they return.
Upon arrival at Bridge Back, inmates sign documents in which they agree to abide by the rules of the program. They are advised that they are still prison inmates; noncompliance with rules could re' suit in a return to incarceration; and any unauthorized absence may be treated as an escape.
Appellant arrived at Bridge Back from prison on December 5, 2003. He agreed to the rules. On January 13, 2004, he signed out at 9:00 a.m. to go to the Employment Development Department. He was supposed to return at 1:00 p.m. that day. He did not return. Bridge Back personnel looked for him, and did not find him. About three months later, he was arrested on the street, at a different location.
At a pretrial hearing on June 2, 2004, appellant stated: "If you guys say I escaped, I escaped. I went out there and smoked crack. I didn't come back. I am being straight up with the court."

2. Defense Testimony
Appellant testified that he did not leave or sign out of the Bridge Back facility on January 13, 2004. On cross-examination, he testified that he was at Bridge Back on January 13 and January 14, but left the program before he was arrested "on the street" on April 16. When he was asked when he left, he said, "I take the Fifth on that."

DISCUSSION

1. Confession During Plea Discussions
Appellant maintains that the trial court abused its discretion when it introduced evidence that, at a pretrial hearing, he confessed that he left Bridge Back to "smoke[ ] crack," and did not return.
The context of appellant's statement shows that it occurred during plea negotiations. Appellant, counsel for both sides, and the court discussed whether appellant wanted to plead not guilty or guilty in two cases, the instant escape case and another case, in which appellant was charged with attempted robbery. The court said, "The other option is to work out a disposition." Appellant responded that he was "willing to settle all this today" if the guilty plea concerned only the escape, as he "went out there and smoked crack," and "didn't come back." However, he was not willing to plead guilty to attempted robbery, because he did not commit that crime.[2] Therefore, the case did not settle that day.
*385 We agree with appellant that his statement was made during plea negotiations and should not have been introduced at his trial. A criminal defendant's offer to plead guilty "is inadmissible in any action or in any proceeding of any nature...." (Evid.Code, § 1153.) "The purpose of the statute is to promote the public interest by encouraging the parties to settle a criminal case without the necessity of a trial." (People v. Magana (1993) 17 Cal.App.4th 1371, 1376, 22 Cal.Rptr.2d 59.) "Bona fide plea negotiations include statements made to the trial court and to the prosecuting attorney because those are the participants in a plea bargain." (Id. at p. 1377, 22 Cal.Rptr.2d 59.)
However, under the unusual circumstances of this case, the error was harmless. (People v. Watson (1956) 46 Cal.2d 818, 836, 299 P.2d 243.) The prosecution established that appellant signed out of Bridge Back at 9:00 a.m., was supposed to return at 1:00 p.m., and did not return. When he testified, appellant admitted that he left the program and disputed only the actual day that he left it. Basd on appellant's testimony, erroneous introduction of his statement during plea negotiations caused no possible prejudice.

2. Prosecution Under General or Specific Statute
Appellant was charged with, and convicted of, violating subdivision (b) of section 4530. He argues that he should have been charged with violating subdivision (c), and not subdivision (b), of section 4530, because subdivision (c) is a more specific statute that carries a lesser punishment.[3]
"Generally, prosecutors may elect to proceed under either of two statutes that proscribe the same conduct." (People v. Cockburn (2003) 109 Cal.App.4th 1151, 1157, 135 Cal.Rptr.2d 807.) However, "when the Legislature has enacted a specific statute addressing a specific matter, and has prescribed a sanction therefor, the People may not prosecute under a general statute that covers the same conduct, but which prescribes a more severe penalty, unless a legislative intent to permit such alternative prosecution clearly appears." (Mitchell v. Superior Court (1989) 49 Cal.3d 1230, 1250, 265 Cal.Rptr. 144, 783 P.2d 731.)
"The doctrine that a specific statute precludes any prosecution under a general statute is a rule designed to ascertain and carry out legislative intent. The fact that the Legislature has enacted a specific statute covering much the same ground as a more general law is a powerful indication that the Legislature intended the specific provision alone to apply. Indeed, in most instances, an overlap of provisions is determinative of the issue of legislative intent and `requires us to give effect to the special provision alone in the face of the dual applicability of the general provision ... and the special provision ...."' (People v. Jenkins (1980) 28 Cal.3d 494, 505-506, 170 Cal.Rptr. 1, 620 P.2d 587, fn. omitted, quoting People v. Gilbert (1969) 1 Cal.3d 475, 481, 82 Cal. Rptr. 724, 462 P.2d 580.)
A comparison of the statutory language shows that subdivisions (a) and (b) are general statutes that define the crime of escape, while subdivision (c) is a special statute, applicable to a specific type of escape.
*386 Subdivision (a) provides in pertinent part: "Every prisoner confined in a state prison ... who, by force or violence, escapes of attempts to escape while at work outside or away from prison under custody of prison officials, officers, or employees, is punishable by imprisonment in a state prison for a term of two, four, or six years."
Subdivision (b) gives a lesser prison sentence, 16 months, two years or three years, to "[e]very prisoner who commits an escape or attempts an escape as described in subdivision (a), without force or violence."
Subdivision (c) states: "The willful failure of a prisoner who is employed or continuing his education, or who is authorized to secure employment or education, or who is temporarily released pursuant to Section 2690, 2910, or 6254, or Section 3306 of the Welfare and Institutions Code, to return to the place of confinement not later than the expiration of a period during which he or she is authorized to be away from the place of confinement, is an escape from the place of confinement punishable as provided in this section. A conviction of a violation of this subdivision, not involving force or violence, shall not be charged as a prior felony conviction in any subsequent prosecution for a public offense."
Thus, subdivision (c) punishes one particular form of escape by a prisoner, a willful failure to make a timely return to confinement after an authorized absence. Subdivisions (a) and (b) are more general, as they punish any escape by a prisoner, "while at work outside or away from prison under custody of prison officials, officers, or employees...."An escape without force or violence, under either subdivision (b) or (c), receives subdivision (b)'s penalty, with this important exception: a violation of subdivision (c) that does not involve force or violence "shall not be charged as a prior felony conviction in any subsequent prosecution for a public offense."
Appellant left Bridge Back at 9:00 a.m. to go to the Employment Development Department, and failed to return at 1:00 p.m., the time he was supposed to return. As a matter of logic, it appears that the more specific language of subdivision (c) should apply to his conduct, as he left "to secure employment," and willfully failed "to return to the place of confinement not later than the expiration of a period during which he ... [was] authorized to be away from the place of confinement...." However, the general/special statute rule required the prosecution to prosecute appellant under the special statute, subdivision (c), only if the general statute, subdivision (b), prescribed a more severe penalty than the special statute. (Mitchell v. Superior Court, supra, 49 Cal.3d at p. 1250, 265 Cal.Rptr. 144, 783 P.2d 731.) We must therefore decide whether subdivision (b) prescribed a more severe penalty than subdivision (c), when the punishments were identical, except for the additional sentence of subdivision (c) that states: "A conviction of a violation of this subdivision, not involving force or violence, shall not be charged as a prior felony conviction in any subsequent prosecution for a public offense."
Respondent maintains that, based on People v. Cockburn, supra, 109 Cal. App.4th at page 1156, 135 Cal.Rptr.2d 807, subdivision (b) does not involve a more severe penalty than subdivision (c). We find Cockburn to be distinguishable. The defendant there was convicted under a general statute, and maintained that he should have been charged under a special statute. Comparing the penalties for the two statutes, Cockburn observed that the lengths of prison terms were identical, but one statute provided for a longer term of probation, and the other contained possible *387 penalties that the other lacked, including a fine and an enhancement for a prior conviction of the same offense. Since the "competing provisions [were] a wash," the general statute did not provide a more severe penalty than the special statute, and the general/special statute rule was inapplicable. (Id. at pp. 1159-1160, 135 Cal.Rptr.2d 807.)
Unlike Cockburn, there is an important difference between the penalties for the general and special statutes in the case at bench. The penalty for violating subdivision (b) is more severe than the penalty for violating subdivision (c), because of the final sentence of subdivision (c), which states that a conviction of that subdivision that does not involve force or violence, "shall not be charged as a prior felony conviction in any subsequent prosecution for a public offense."
Respondent maintains that the punishments for the two subdivisions are actually the same, because use of the subdivision (b) conviction in a subsequent prosecution would "'"arise as an incident of the subsequent offense rather than constituting a penalty for the prior offense."`" (Gonzales v. Superior Court (1995) 37 Cal.App.4th 1302, 1309, 44 Cal.Rptr.2d 144, quoting People v. Jackson (1985) 37 Cal.3d 826, 833, 210 Cal.Rptr. 623, 694 P.2d 736.) Respondent has omitted the first part of Gonzales's quotation of Jackson, which shows that the quoted principle applies "`[i]n the context of habitual criminal statutes The principle does not apply to the inquiry here.
Respondent also argues that the People may prosecute under a general statute that covers the same conduct but provides for a more severe penalty, if "a legislative intent to permit such alternative prosecution clearly appears." (Mitchell v. Superior Court, supra, 49 Cal.3d at p. 1250, 265 Cal.Rptr. 144, 783 P.2d 731.) That rule is also inapplicable, as there is no clear legislative intent that permits a prosecution of appellant's conduct under subdivision (b).[4]
Moreover, we must give the language of a statute its usual, ordinary meaning (Kaufman & Broad Communities v. Performance Plastering, supra, 133 Cal. App.4th at p. 29, 34 Cal.Rptr.3d 520), and avoid any construction that renders statutory words superfluous. (Shoemaker v. Myers (1990) 52 Cal.3d 1, 22, 276 Cal.Rptr. 303, 801 P.2d 1054.) Here, the Legislature specifically included in subdivision (c) a sentence it did not include in subdivisions (a) and (b). That sentence precludes a conviction of subdivision (c), "not involving force or violence," from being "charged as a prior felony conviction in any subsequent prosecution for a public offense." The Legislature specifically decided to provide a lesser penalty for the conduct in subdivision (c), by making a violation of subdivision (c) unusable as a prior felony conviction in a subsequent criminal prosecution. To avoid making the last sentence of subdivision (c) superfluous, conduct that violates subdivision (c) must be prosecuted under subdivision (c), rather than under the more general escape provision of subdivision (b). Therefore, appellant should *388 have been prosecuted under subdivision (c), and not (b).
There remains the question of remedy. Appellant maintains that the case must be remanded, with directions to the trial court to resentence appellant under subdivision (c). In the interests of judicial economy, instead of remanding for resentencing, we modify appellant's conviction, from a violation of subdivision (b) to a violation of subdivision (c).

3. Imposition of the Upper Term
Finally, appellant maintains that, under Blakely, supra, 542 U.S. 296, 124 S.Ct. 2531 and Cunningham, supra, ___ U.S. ___, 127 S.Ct. 856, imposition of the upper term violated his federal constitutional rights to proof beyond a reasonable doubt and to trial by jury.
Black II interpreted Cunningham to mean that "imposition of the upper term does not infringe upon the defendant's constitutional right to jury trial so long as one legally sufficient aggravating circumstance has been found to exist by the jury, has been admitted by the defendant, or is justified based upon the defendant's record of prior convictions." (Black II, supra, at p. 816, 62 Cal.Rptr.3d 569, 161 P.3d 1130.) Black II identified two aggravating circumstances, each of which was sufficient to support the upper term. One was the jury's finding that the defendant used force, which was made in the context of a finding that the defendant was ineligible for probation due to the use of force. The other was the defendant's criminal history.
Here, as in Black II, appellant's criminal history justified imposition of the upper term.
The trial court gave these reasons for the upper term: "[H]e's got the prior prison terms. He was on parole.... His prior conduct indicates to me he is a danger to society. He frankly abused a position of trust to a certain extent by, you know, they trusted him that he was going to go out and come back. All these reasons, and I didn't see frankly any reason, any mitigating factors."
The findings related to appellant's prior criminal history are amply supported by the probation report.[5] It recommended the upper term based on three aggravating factors: (1) prior convictions that are numerous or of increasing seriousness, (2) appellant was on probation or parole when the crime was committed, and (3) his prior performance on probation or parole was unsatisfactory. According to the report, appellant's criminal convictions began with a conviction in 1985 for carrying a concealed weapon, for which he received a jail term. The day after that conviction, he was convicted of robbery, and sentenced to prison for five to 10 years. In March 1994, he was sentenced to 72 months in federal prison, for being a felon in possession of a firearm. In August 2003, he was sentenced to state prison for 16 months, for driving a vehicle without the owner's consent. When he was released from prison to the Bridgeback program, he committed the crime in this case.
Appellant maintains that the recidivism exception of Almendarez-Torres v. United States (1998) 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350, does not permit findings that involve more than the "fact" of a prior conviction. Black II, supra, 41 Cal.4th at pages 819-820, 62 Cal.Rptr.3d 569, 161 P.3d 1130, rejected that very argument. As Black II interpreted Cunningham, only one valid aggravating factor is necessary, *389 and a defendant's prior criminal history is a valid aggravating factor. We must follow the decisions of our Supreme Court. (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455, 20 Cal.Rptr. 321, 369 P.2d 937.) Therefore, imposition of the upper term here complied with appellant's Sixth Amendment right to trial by jury.

DISPOSITION
Appellant's conviction is modified from a violation of section 4530, subdivision (b), to a violation of section 4530, subdivision (c). The trial court is directed to prepare a corrected abstract of judgment to reflect that modification, and to forward a certified copy of the corrected abstract of judgment to the Department of Corrections. In all other respects, the judgment is affirmed.
We concur: COOPER, P.J., and RUBIN, J.
NOTES
[1] Subsequent code references are to the Penal Code unless otherwise stated.
[2] It appears that appellant was acquitted on the attempted robbery case, before his trial on the escape case.
[3] All subsequent references to subdivisions (a), (b) or (c) relate to subdivisions of section 4530.
[4] Concurrently with the filing of respondent's brief, respondent requested judicial notice of legislative materials that concern subdivision (c)'s enactment in 1970. (Stats.1970, ch. 570, p. 1142, § 1.) We denied judicial notice without prejudice to filing an additional request with the items segregated and with appropriate points and authorities. Respondent renewed the request in compliance with our order. Nonetheless, we deny judicial notice, as there is no ambiguity in the statutory language and "resort to legislative history is appropriate only where statutory language is ambiguous." (Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc. (2005) 133 Cal.App.4th 26, 29, 34 Cal.Rptr.3d 520.)
[5] We have reservations about the finding of an abuse of trust, but do not address that finding, since only one aggravating circumstance is sufficient.