Filed 9/16/13  P. v. Randhawa CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C070813 |
| v. | (Super. Ct. No. SF093267A) |
| RAJWINDER SINGH RANDHAWA, | |
| Defendant and Appellant. | |

A jury convicted defendant Rajwinder Singh Randhawa of attempted murder and found true certain gun and great bodily injury enhancements.

Defendant now contends (1) the trial court should have redacted the transcripts of a recorded jailhouse conversation between defendant and his brother-in-law; and (2) the trial court should have stayed the Penal Code section 12022.7 great bodily injury enhancement.  The Attorney General agrees with defendant's second contention.

1

We conclude (1) the trial court did not err in admitting unredacted transcripts of the jailhouse conversation, and (2) defendant is correct that one of the enhancements should be stayed.

We will stay the Penal Code section 12022.7 enhancement and affirm the judgment as modified.

BACKGROUND

Karnail Singh and his wife Ranjeet Kaur were friends of defendant and his wife, Tejinder Kaur Randhawa. Defendant and his wife often argued; defendant's wife told Singh and Kaur that defendant was volatile and violent. The wife left defendant in early 2004, storing some of her belongings with Singh and Kaur at their home. When Singh informed defendant that defendant's wife picked up her clothes from Singh's home, defendant became upset.

Defendant came to the apartment of Singh and Kaur one evening in September 2004, carrying a small briefcase. He said he wanted to show them some papers. But then defendant repeatedly asked Singh to divulge his wife's location. When Singh said he did not know, defendant pulled a gun from his briefcase and said: "I will kill you and then I will kill my wife."

Singh stood up and said "my brother, don't [do] this thing to me." He tried to grab the gun from defendant, but defendant then shot Singh in the shoulder. As Kaur picked up the phone to call the police, defendant aimed his gun at her, and the gun fired twice. Singh tried to hold defendant, but defendant wrestled free and shot Singh in the chest, below his heart. After the last shot, defendant said, "You are gone now. You are finished. Leave me."

Defendant went to his pickup truck and drove off; Singh and Kaur ran after him. Singh eventually passed out from blood loss.

Four Winchester .380-caliber casings and a bullet fragment were found on the apartment floor, as were defendant's shoes. A briefcase left at the apartment contained

2

defendant's driver's license, his pink slip for a Nissan pickup truck, business cards, several Winchester .380-caliber rounds, and a passport. Defendant's fingerprints were on a water glass found sitting on the coffee table. In addition, defendant's truck had blood on the exterior when it was found in Union City on September 15, 2004. A search of his residence found a box of 50 Winchester .380-caliber rounds.

Defendant's sister told police defendant may have fled from Canada to India. In 2009, defendant was arrested in Germany and transported to San Joaquin County.

Defendant testified that his wife moved to Fresno and wrongly accused him of threatening to kill her. He said Singh gave defendant the gun, and on the day of the incident defendant went to Singh's home to return the gun and the bullets. Defendant said that when they discussed immigration, Singh got angry and picked up the gun. Defendant jumped on Singh in self-defense and never intended to harm him, but the gun fired four times during the struggle.

Additional facts relevant to defendant's contentions are included in the discussion.

A jury found defendant guilty of attempted murder (Pen. Code, §§ 664/187)[1] with enhancements for personally discharging a handgun causing great bodily injury and personally inflicting great bodily injury (§§ 12022.53, subds. (a), (d), 12022.7, subd. (a)). The trial court sentenced defendant to 37 years to life in prison.

DISCUSSION

I

Defendant contends the trial court should have redacted the transcripts of a recorded jailhouse conversation between defendant and his brother-in-law.

---

[1] Undesignated statutory references are to the Penal Code.

3

After defendant's arrest, his brother-in-law, Harjinder Sandhu, met defendant at the county jail. Their conversation, spoken in Punjabi, was recorded. Defendant repeatedly asked the brother-in-law to offer a bribe to Singh so that Singh would change his story; defendant also discussed what Singh should say. In addition, defendant admitted that the bullets found at his house were his, and that he had gone to India, England, France and Germany after the attack. He noted the "DA said he [was] going to give me life, 25-30 years" and the "DA said that there isn't a deal to offer [me]."

At trial, the parties stipulated that two translations of the jail conversation were accurate transcriptions. The prosecutor subsequently moved to admit both transcripts in their entirety. Defense counsel argued that portions of the transcripts should be redacted. The trial court determined there was nothing inadmissible in the transcripts and admitted both in their entirety.

After the verdict, defendant moved for a new trial based on the transcripts, arguing the references to plea negotiations should have been redacted. The trial court denied the motion.

B

Defendant claims his jail comment that the district attorney said he would get life in prison, and the statement that the district attorney did not have a deal or offer for him, should have been redacted from the transcripts because they were not relevant, and they improperly informed the jury of plea negotiations and defendant's possible punishment. (Evid. Code, § 1153; *People v. Ruiloba* (2005) 131 Cal.App.4th 674, 692-693.)

But during the cross-examination of Harjinder, which occurred *before* the trial court admitted the transcripts into evidence, defense counsel expressly mentioned the alleged comment by the district attorney that he would give defendant "life, 25 to 30 years." Defense counsel asked Harjinder: "Do you remember [defendant] talking to you where he says the D.A. said he's going to give me life, 25 to 30 years, and then you said

4

25 to 30 years, what happened to the lawyer?  Did he hire one?  Did anything happen, or did nothing happen?"  Harjinder responded, "I did ask him if he had hired an attorney or not."  Because defense counsel specifically referenced the district attorney's alleged comment about "life, 25 to 30 years," the trial court did not err in admitting the conversation without redaction to give proper context for that portion of the discussion.

We next address defendant's comment that the DA said there was no deal to offer him.  Evidence Code section 1153 provides in pertinent part:  "Evidence . . . of an offer to plead guilty . . . made by the defendant in a criminal action is inadmissible in any action[.]"  But "there is no need to protect the defendant's voluntary disclosures about the bargaining process made to third persons uninvolved and unnecessary to the plea negotiations.  Those communications are not part of the bona fide plea negotiations as they cannot be seen as an attempt to influence the court or the prosecutor to accept a particular offer.  Thus, these statements are not embraced within the statutory prohibition."  (*People v. Magana* (1993) 17 Cal.App.4th 1371, 1377.)

Defendant's statement to Harjinder about the lack of a plea offer was not part of plea negotiations and therefore was not barred by Evidence Code section 1153.  Moreover, the statement was relevant to provide context to the conversation and to show that defendant had a motive to bribe Singh.  The trial court did not err in admitting the challenged portions of the transcripts.

II

Defendant and the Attorney General agree that the trial court should have stayed the section 12022.7 enhancement.

The trial court imposed a consecutive 25-year-to-life term for personally inflicting great bodily injury with a firearm during an attempted murder pursuant to section 12022.53, subdivisions (a) and (d), and it also imposed a consecutive three-year term for personally inflicting great bodily injury pursuant to section 12022.7, subdivision. (a).  But section 12022.53, subdivision (f) states in pertinent part:  "An enhancement for great

5

bodily injury as defined in Section 12022.7, 12022.8, or 12022.9 shall not be imposed on a person in addition to an enhancement imposed pursuant to subdivision (d)."

Under the circumstances, the trial court should have imposed the section 12022.53 enhancement, and imposed but stayed execution of the section 12022.7 enhancement. (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1126-1127.) We will modify the judgment to stay the section 12022.7 enhancement.

### DISPOSITION

The judgment is modified to impose but stay execution of the section 12022.7 enhancement. As modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment reflecting the modified judgment, and to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

                                   MAURO            , J.

We concur:

             ROBIE           , Acting P. J.

             BUTZ           , J.