[No. S120238. Aug. 7, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
SHEA MICHAEL MODIRI, Defendant and Appellant.

CounseL

Candace Hale, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Ronald A. Bass and Gerald A. Engler, Assistant Attorneys General, René A. Chacón, Laurence K. Sullivan and Dorian Jung, Deputy Attorneys General, for Plaintiff and Respondent.

OpINION

**BAXTER, J.**—At a crowded neighborhood party, Shea Michael Modiri (defendant) started and joined a group attack that left the teenage victim with multiple serious injuries. The evidence showed that defendant personally applied physical force to the victim several times. However, chaos at the scene prevented witnesses from linking the victim's injuries to a particular assailant, weapon, or blow.

Defendant was convicted of felony assault (Pen. Code, § 245, subd. (a)(1)),[1] among other things. To enhance the sentence in any *future* prosecution, the jury sustained an allegation that, in the course of the assault, defendant "personally inflict[ed] great bodily injury" on the victim. (§ 1192.7, subd. (c)(8) (section 1192.7(c)(8)).)

In *People v. Cole* (1982) 31 Cal.3d 568 [183 Cal.Rptr. 350, 645 P.2d 1182] (*Cole*), we construed similar personal-infliction language authorizing a *present* sentencing enhancement under what is now section 12022.7, subdivision (a) (section 12022.7(a)). *Cole* held that this requirement covers persons who "directly acted to cause the injury," and excludes those who merely "aided or abetted the actor directly inflicting the injury." (31 Cal.3d at p. 572.)

Here, CALJIC No. 17.20 told the jury that defendant must personally have inflicted great bodily harm. The same instruction also said that if he participated in a group attack, and jurors could not decide which person inflicted which injury, the allegation could be sustained if defendant personally applied physical force to the victim either (1) of a nature that, "by itself," could have caused great bodily injury, or (2) under such circumstances that the "cumulative effect" of the force used by all participants would have caused the injury. (See *People v. Corona* (1989) 213 Cal.App.3d 589 [261 Cal.Rptr. 765]

---

[1] All further statutory references are to the Penal Code.

(*Corona*), review den. Nov. 30, 1989; *People v. Dominick* (1986) 182 Cal.App.3d 1174 [227 Cal.Rptr. 849] (*Dominick*), review den. Oct. 30, 1986; see also Judicial Council of Cal. Crim. Jury Instns. (2006) CALCRIM No. 3160.)

The Court of Appeal held that CALJIC No. 17.20 prejudicially failed to require the *personal* infliction of great bodily harm under section 1192.7(c)(8). When defendant sought review on other grounds, we solicited briefing on whether the Court of Appeal was wrong. The issue presented is whether the group beating theories in CALJIC No. 17.20 satisfy the personal-infliction requirement of section 1192.7(c)(8), as construed in *Cole, supra*, 31 Cal.3d 568, and applied in *Corona, supra*, 213 Cal.App.3d 589, and *Dominick, supra*, 182 Cal.App.3d 1174.

█ No instructional error occurred at trial. For 20 years, courts have upheld personal-infliction findings where the defendant physically joins a group attack, and directly applies force to the victim sufficient to inflict, or contribute to the infliction of, great bodily harm. Consistent with the statutory language and the manner in which it has been judicially construed, the defendant need not be the sole or definite cause of a specific injury. For reasons we explain, these group beating principles have been accepted by the Legislature. CALJIC No. 17.20 duly describes them. A contrary approach would mean that those who perpetrate mob violence and inflict gratuitous injury would often evade enhanced punishment. Thus, we will reinstate the section 1192.7(c)(8) finding vacated on appeal.

FACTS

A. *The Evidence*

On July 22, 2000, Matthew Bour, who was 18 years old, held a party for his friends at the home he and his father shared. Bour's father was out of town when it occurred.

Before the party, Bour's father asked defendant, a 19-year-old neighbor and childhood friend of Bour's, to watch the house and maintain order. Another invited guest was Bour's friend, Darren Hitt.

About 100 people attended the party. They occupied the front and back yards, and filled the house. Bour provided beer from a keg. Guests also brought their own alcohol. Some marijuana use occurred.

Between 10:00 and 11:00 p.m., while Bour managed the crowd in the front yard, Ryan Schon arrived with Amy Jorgenson, John Cane, and another

young man. Schon knew both Bour and defendant from school and sports activities. Years earlier, Bour and Schon had exchanged insults and threats. There had been no animosity between Schon and defendant or Hitt.

Schon's presence created a stir at the party. Bour expressed concern about it to defendant and other guests. One partygoer, Amber Oxley, tried to warn Schon that he should go. Oxley sensed that Bour and his friends might fight Schon.

As he approached Bour in the yard, Schon saw about 20 or 30 people nearby. Schon greeted Bour, who seemed friendly. Oxley thought Bour's manner was feigned.

Moments later, Hitt confronted Schon. Hitt said that "somebody doesn't like you." Schon replied, "I don't know anybody here."

Defendant intervened by saying, "You know me." According to Schon's testimony at trial, defendant spoke in a hostile tone, and bumped Schon with his chest. Schon thought defendant was trying to provoke a fight. The crowd told Schon to leave and threatened him. Defendant began pushing Schon, telling him to leave or fight. Separated from his friends, Schon did not want to escalate matters.

Schon announced he would leave, and called for Jorgenson. Jorgensen approached and began walking with Schon to their car. Both Jorgensen and Cane saw the beating of Schon that ensued. Their testimony, along with Schon's, formed the basis of the prosecution case, as follows.

Defendant pursued Schon as he headed toward the car, pushing and pulling Schon. Schon tried to brush defendant away. The crowd followed the pair as they entered a neighbor's property. All of a sudden, defendant punched Schon with his fist. Schon recalled being hit on the left side of the face. Other witnesses saw the punch hit his jaw or cheek.

Schon testified that as he tried to defend himself, he looked sideways and saw "a big rush of people coming." Defendant stepped back and let the crowd tackle Schon, who fell to his knees. Jorgensen and Cane saw 10 to 15 people swarm Schon.

Schon further testified that he tried to stand, but was hit over the back of his head with a bottle and knocked down. The same thing happened at least two more times. Schon also felt kicks and blows on all sides. He could not see the faces of most of his attackers. He was certain, however, that defendant "came in and hit [him]."

This account was corroborated. According to Jorgenson, defendant "just ran on [Schon] and jumped on [him]." She saw defendant "in the group of guys that were hitting [and] kicking" Schon. Cane likewise testified that defendant was "the only face" in the crowd he recognized. However, he could not tell which blows hit Schon. Cane pushed one unknown attacker off Schon. Both Jorgenson and Cane heard bottles breaking. Jorgenson saw someone hit Schon with a bottle, but she could not see who it was.

The attack dissipated when Jorgenson yelled and jumped into the fray. She pushed defendant away from Schon. As she did so, she felt a bottle in defendant's hand press against her hipbone. Schon saw defendant standing next to him after Jorgenson intervened.

The beating lasted from 10 or 15 seconds to one minute. Schon rose to his feet, disoriented and bleeding profusely from the head. He and Jorgenson walked away. The crowd continued to taunt and threaten Schon. Cane watched as defendant pursued Schon while holding a bottle. Both Cane and Jorgenson, who looked back, saw defendant throw the bottle. It crashed near Jorgenson and Schon.

Immediately after the attack, defendant's friend, Leslie LaBarbera, heard defendant ask for a beer. Defendant said he had "just broke the last [bottles] over the guy's head." LaBarbera could not recall whether defendant mentioned two or three bottles. Defendant's girlfriend, Lynelle Rose, met Hitt and other partygoers at a nearby park. She testified that Hitt admitted striking Schon on the head with a Remy bottle, and that she saw Hitt holding a Remy bottle at the party.

Police officers arrived at Bour's house around 11:00 p.m. They saw 60 teenagers outside, many of whom ran away. There were bloodstains and broken bottles on the ground, including bloody glass. Unbroken bottles littered the yard.

Schon's blood was found on defendant's shoes, socks, and pants. According to a prosecution expert, two stains on the left leg of the pants were likely made with a blood-drenched hand. One consisted of a bloody swipe, and the other was a heavy transfer stain.[2] Schon's blood also was found on other people's clothes, including Hitt's shoes.

Schon received treatment at the hospital the same night. Several cuts on his head were closed with staples—six on the side, and four on top. He also

---

[2] The same expert found blood spatters on the right leg of defendant's pants. They had traveled through the air from a source close by. No tests were run on these small stains.

suffered facial trauma and a broken nose. Schon had surgery to repair his nose several days later. The attack also left a large gash on his wrist, which was bandaged.

Defendant testified at trial. He admitted ordering Schon to leave the party in the presence of Hitt and others. According to defendant, Schon first pushed him into the crowd, which pushed defendant back towards Schon. Defendant punched Schon in the face to protect himself. Defendant claimed the crowd tossed him into a rosebush, where he stayed until the attack on Schon stopped. Defendant then threw a full bottle of beer in Schon's direction. Defendant denied saying that he hit Schon over the head with bottles.[3]

## B. *The Proceedings*

As pertinent here, defendant was charged and convicted of felony assault against Schon. (§ 245, subd. (a)(1) [assault with deadly weapon or by means of force likely to produce great bodily injury].) The jury also sustained two allegations that made the assault conviction a "serious felony" for purposes of punishment in a future prosecution. (See §§ 667, 1192.7.) First, the jury found that defendant personally used a dangerous and deadly weapon, a bottle, in assaulting Schon. (§ 1192.7, subd. (c)(23) (section 1192.7(c)(23)).) Second, and critical here, the jury found that defendant personally inflicted great bodily injury upon Schon during the assault. (§ 1192.7(c)(8).)[4]

In obtaining this verdict, the prosecutor argued that defendant broke bottles over Schon's head, thereby committing felony assault and personally using a bottle under section 1192.7(c)(23). He observed that defendant admitted such conduct in LaBarbera's presence, and that blood from Schon's head wounds landed on defendant's hand and pants. The prosecutor also argued that defendant personally inflicted great bodily injury under section 1192.7(c)(8) because he participated in the group beating that caused Schon's broken nose,

---

[3] The police saw scratches on defendant's hands and leg. A criminalist found traces of defendant's own blood on his pants. One defense witness, Gina Kottikas, testified that she saw defendant in the rosebush and thought he had "passed out" there. Another defense witness, Tyler Folck, saw defendant fly backwards into the crowd, and then lost sight of him.

[4] The jury also convicted defendant of simple battery, a misdemeanor, as a lesser included offense of battery with serious bodily injury. (§§ 242, 243, subds. (a) & (d).) Defendant was acquitted of the latter felony, which was alleged in the information. The jury made no finding on the related allegation that defendant personally inflicted great bodily injury in committing the charged battery. (§ 1192.7(c)(8).) Defendant received three years' probation, including a nine-month jail term to be served in a work or education furlough program. In addition, the jury returned verdicts against Hitt, who was jointly charged with the same crimes as defendant. Hitt was convicted of simple assault (§§ 240, 241, subd. (a)), and acquitted of all other offenses. Hitt is not a party to proceedings in this court.

head wounds, and other injuries. According to the prosecutor, defendant pushed and punched Schon, and hit him with fists and bottles.[5]

As noted, defendant's jury received CALJIC No. 17.20. It stated that the section 1192.7(c)(8) allegation required them to find whether defendant personally inflicted great bodily injury on Schon in committing the charged crimes. The instruction explained that the People bore the burden of proving the allegation and that any reasonable doubt must be resolved in defendant's favor.

CALJIC No. 17.20 further stated that if defendant "participate[d] in a group beating," and it was "not possible to determine which assailant inflicted a particular injury," defendant could be found to have personally inflicted great bodily injury on Schon under two alternative theories or scenarios. The first scenario occurred where "the application of unlawful physical force upon the victim was of such a nature that, by itself, it could have caused the great bodily injury suffered by the victim." The second group beating theory applied where, at the time defendant "personally applied unlawful physical force to the victim," he "knew" that other participants in the same incident were applying similar force, and he "knew, or reasonably should have known, that the cumulative effect of all the unlawful physical force would result in great bodily injury to the victim."[6]

---

[5] Defense counsel argued that defendant used no unlawful physical force against Schon. Counsel blamed Schon for attending the party, for staying when told to go, and for becoming aggressive with defendant. Any pushing or punching by defendant, counsel urged, occurred in self-defense—a theory on which the jury was instructed at trial. Counsel theorized that defendant fell into the rosebush, and stayed there while the group attacked Schon. Under this view, which the jury apparently rejected, defendant never struck Schon with a bottle or pummeled him with his fists.

[6] As given at defendant's trial, CALJIC No. 17.20 provided, in material part, as follows: "If you find [the] defendant guilty of [one or both felonies charged in the information], you must determine whether [he] personally inflicted great bodily injury on Ryan Schon in the commission or attempted commission of the crime. [¶] 'Great bodily injury,' as used in this instruction, means a significant or substantial physical injury. Minor, trivial or moderate injuries do not constitute great bodily injury. [¶] *When a person participates in a group beating and it is not possible to determine which assailant inflicted a particular injury, he or she may be found to have personally inflicted great bodily injury upon the victim if* (1) *the application of unlawful physical force upon the victim was of such a nature that, by itself, it could have caused the great bodily injury suffered by the victim*; or (2) *that at the time the defendant personally applied unlawful physical force to the victim, the defendant knew that other persons, as part of the same incident, had applied, were applying, or would apply unlawful physical force upon the victim and the defendant then knew, or reasonably should have known, that the cumulative effect of all the unlawful physical force would result in great bodily injury to the victim.* [¶] The People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find it to be not true."

On appeal, defendant raised only sentencing issues under section 1192.7, subdivision (c) (section 1192.7(c)). He argued that the group beating principles in CALJIC No. 17.20 negated the requirement of true personal infliction, and improperly allowed a section 1192.7(c)(8) finding based on injuries other assailants had caused. Defendant also claimed the instruction tainted the section 1192.7(c)(23) finding that he "personally" used a bottle during the crime.

The Sixth District Court of Appeal accepted defendant's claim of prejudicial instructional error concerning the personal infliction of great bodily injury on Schon. In doing so, the court invalidated the second group beating theory in CALJIC No. 17.20. However, the Court of Appeal declined to disturb the personal-use finding, concluding that the instructional error was harmless based on undisputed evidence that defendant threw a bottle at Schon. Hence, only the section 1192.7(c)(8) finding was reversed, and the matter was remanded for a limited retrial on that issue.[7]

Defendant sought review. His petition renewed the instructional challenge to the personal-use finding, and criticized the Court of Appeal for using the bottle-throwing incident to uphold it. Having won on the issue below, defendant did not address the personal-infliction finding under section 1192.7(c)(8), the related instruction in CALJIC No. 17.20, or the group beating principles contained therein. The Attorney General did not file an answer or separately request review.

We granted defendant's petition for review. In the process, we asked the parties to address whether the Court of Appeal properly vacated the section 1192.7(c)(8) finding. We now must decide whether the group beating principles routinely given to juries (CALJIC No. 17.20; see CALCRIM No. 3160), for present and future sentencing purposes, conflict with the requirement that the defendant "personally inflict[] great bodily injury" (§ 1192.7(c)(8); see § 12022.7(a)), as construed and applied by the courts. We turn to that issue.

### DISCUSSION

California has many sentencing statutes that increase the prison term otherwise available for the charged offense. Some of them apply if the

---

[7] Defendant also complained on appeal about the trial court's response to the jury's written request during deliberations for "clarification of 'personal' " as used in section 1192.7(c)(8), and CALJIC No. 17.20. After consulting with counsel, the court directed the jury to certain instructions it had already received, including CALJIC No. 17.20. Having vacated the personal-infliction finding on other grounds, the Court of Appeal did not decide whether the trial court properly handled the jury note. The parties have not briefed the issue in this court. We do not address it and leave the issue to be resolved in the first instance by the Court of Appeal on remand. Among the questions the appellate court may confront are (1) whether defendant preserved a claim that the trial court responded improperly, and (2) in any event, whether the trial court abused its broad discretion in handling the matter.

defendant committed the crime under aggravated circumstances. For instance, section 12022.7(a) mandates an additional consecutive three-year term for a defendant who, under certain conditions, "personally inflicts great bodily injury" while committing or attempting a felony. This provision deters and punishes the infliction of gratuitous harm not inherent in the crime itself. (*People v. Jefferson* (1999) 21 Cal.4th 86, 101 [86 Cal.Rptr.2d 893, 980 P.2d 441]; *People v. Escobar* (1992) 3 Cal.4th 740, 746–747 [12 Cal.Rptr.2d 586, 837 P.2d 1100].)[8]

Other statutes impose longer sentences and greater punishment on repeat offenders, including those with prior serious felony convictions. (*People v. Woodell* (1998) 17 Cal.4th 448, 452 [71 Cal.Rptr.2d 241, 950 P.2d 85]; *People v. Dotson* (1997) 16 Cal.4th 547, 553 [66 Cal.Rptr.2d 423, 941 P.2d 56].) Examples include the habitual criminal statute (§ 667, subd. (a) [five-year consecutive term]), and the three strikes law. (§ 667, subd. (e) [various sentencing formulas].) These provisions incorporate the "serious felony" definition set forth in section 1192.7(c). (§ 667, subds. (a)(4) & (d)(1).) Much like the enhancement in section 12022.7(a), section 1192.7(c)(8) defines a serious felony to include one in which "the defendant personally inflicts great bodily injury" on the victim. (§ 1192.7(c)(8); see § 1192.7(c)(23) [serious felony involves personal use of dangerous or deadly weapon].)[9]

Defendant claims the standard instruction given at his trial omitted the section 1192.7(c)(8) requirement that he personally inflict great bodily injury on Schon. He argues that, to a greater or lesser extent, both of the group beating theories in CALJIC No. 17.20 erroneously substituted the harm inflicted by others for the serious harm that "he, himself" must have caused. The instruction primarily did so, he claims, by not requiring the jury to find that he produced a particular grievous injury, or wielded a particular injury-causing weapon or blow. Defendant insists the error was prejudicial under any applicable standard, and violated his federal and state due process rights.

The Attorney General responds that CALJIC No. 17.20 satisfies section 1192.7(c)(8) by requiring a group assailant to apply physical force directly to

---

[8] Section 12022.7 provides, in part: "(a) Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years. [¶] . . . [¶] (f) As used in this section, 'great bodily injury' means a significant or substantial physical injury. [¶] (g) . . . Subdivision[] (a) . . . shall not apply if infliction of great bodily injury is an element of the offense."

[9] Section 1192.7(c) provides, in part: "As used in this section, 'serious felony' means any of the following: [¶] . . . (8) any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice, or any felony in which the defendant personally uses a firearm; . . . (23) any felony in which the defendant personally used a dangerous or deadly weapon."

the victim to such a degree that he contributes substantially to the overall grievous effect. However, the Attorney General insists, the instruction properly does not require the defendant, as a direct participant in a group beating or assault, to inflict a particular injury, or to be the sole cause of great bodily harm, where no such showing or finding can be made. We agree that CALJIC No. 17.20 conforms to statutory law in this respect, and that no instructional error or constitutional violation occurred.

Our analysis begins, of course, with the statutory language. (See *People v. Wutzke* (2002) 28 Cal.4th 923, 933–934 [123 Cal.Rptr.2d 447, 51 P.3d 310].) It seems plain that section 1192.7(c)(8) is not limited in the manner defendant suggests. Commonly understood, the verb, "to inflict," means "to lay (a blow) on: cause (something damaging or painful) to be endured: impose." (Webster's 3d New Internat. Dict. (2002) p. 1160; accord, 7 Oxford English Dict. (2d ed. 1989) p. 938.) A blow is "inflict[ed]" as long as it hits or strikes its target, or is administered or delivered thereto. (West's Legal Thesaurus/Dict. (special deluxe ed. 1986) p. 406; Burton, Legal Thesaurus (deluxe ed. 1980) p. 280; accord, *People v. Gonzales* (1994) 29 Cal.App.4th 1684, 1695–1696 [35 Cal.Rptr.2d 450], review den. Feb. 16, 1995 [defining "inflicts" under § 1192.7(c)(8)].) These definitions suggest that section 1192.7(c)(8) contemplates physical contact of a forceful nature.

The term "personally," which modifies "inflicts" in section 1192.7(c)(8), does not mean exclusive here. This language refers to an act performed "in person," and involving "the actual or immediate presence or action of the individual person himself (as opposed to a substitute, deputy, messenger, etc)." (9 Oxford English Dict., *supra*, p. 599.) Such conduct is "[c]arried on or subsisting between individual persons directly." (*Ibid.*, accord, Webster's 3d New Internat. Dict., *supra*, p. 1686; *Cole, supra*, 31 Cal.3d 568, 572 [defining "personally" in § 12022.7].) Framed this way, the requisite force must be one-to-one, but does not foreclose participation by others.

In short, nothing in the terms "personally" or "inflicts," when used in conjunction with "great bodily injury" in section 1192.7(c)(8), necessarily implies that the defendant must act alone in causing the victim's injuries. Nor is this terminology inconsistent with a group melee in which it cannot be determined which assailant, weapon, or blow had the prohibited effect. By its own terms, the statute calls for the defendant to administer a blow or other force to the victim, for the defendant to do so directly rather than through an intermediary, and for the victim to suffer great bodily injury as a result.

The challenged instruction reasonably conveys these statutory principles. CALJIC No. 17.20 requires jurors to first determine the defendant's guilt of the charged crime. The instruction applies if they then decide that he

"participate[d]" in a group beating, and that "it is not possible" to determine which assailant inflicted a particular injury. (*Ibid.*) Both prongs of the instruction permit a personal-infliction finding in this instance only if the defendant personally "appli[es] unlawful physical force" to the victim. (*Ibid.*) CALJIC No. 17.20 makes clear that the physical force personally applied by the defendant must have been sufficient to produce great bodily injury either (1) by itself, or (2) in combination with other assailants. Both group beating theories exclude persons who merely assist someone else in producing injury, and who do not personally and directly inflict it themselves.

■ It bears emphasis that CALJIC No. 17.20 contemplates acts that contribute substantially to the victim's injured state. By definition, "force" involves "power, violence, compulsion, or constraint exerted upon or against a person." (Webster's 3d New Internat. Dict., *supra*, p. 887; accord, 6 Oxford English Dict., *supra*, p. 33; American Heritage Dict. (4th ed. 2000) p. 686.) Also, the instruction's group beating theories preclude a section 1192.7(c)(8) finding where the defendant's conduct "could [not] have," or "would [not] have]," caused or contributed to the requisite harm. (CALJIC No. 17.20.) In light of these qualifications, the defendant's role in both the physical attack and the infliction of great bodily injury cannot be minor, trivial, or insubstantial. The instruction thus does not conflict with the statutory language in the manner defendant suggests.

Contrary to what defendant further claims, nothing in *Cole, supra*, 31 Cal.3d 568, warrants a different result. *Cole* construed language in an earlier version of section 12022.7, which, like the present one, authorizes an enhancement for anyone who "personally inflicts great bodily injury" on the victim. (§ 12022.7, as amended by Stats. 1979, ch. 145, § 17, p. 341 (former section 12022.7).) As we later explain, section 1192.7(c)(8) was enacted after section 12022.7, and incorporated similar language.

In *Cole*, the defendant and an accomplice broke into the home of a gun dealer, grabbed firearms that were on a table, and started issuing orders to the victim. Knowing the guns were unloaded, the victim was slow to respond. Hence, the defendant ordered his accomplice to kill the victim. The accomplice complied by swinging the rifle at the victim, hitting him several times and cutting his head. The defendant never touched the victim with a weapon or by any other means. At one point, the defendant aimed the victim's unloaded rifle at him and tried to block his escape. When the victim tried to grab and load another gun, the defendant ran from the house, apparently taking one or more firearms with him. The accomplice struggled with the victim, and then also fled. The defendant was ultimately convicted of robbery, burglary, and grand theft. (*Cole, supra*, 31 Cal.3d at p. 571.)

In reviewing the judgment, the *Cole* court agreed with the defendant that his sentence could not properly be enhanced under former section 12022.7. (*Cole, supra*, 31 Cal.3d 568, 572, 579.) The court held that the statute applies only to persons who "actually" (*id.* at p. 573) and "directly perform the act that causes the physical injury." (*Id.* at p. 579.) The injury-producing act must be done by the defendant "himself," and not by someone who merely "aided or abetted the actor directly inflicting the injury." (31 Cal.3d at p. 572; see *id.* at p. 575, fn. 4.) The *Cole* court observed that while the defendant directed the attack and moved to block the victim's escape, he never actually struck or injured the victim. Hence, by its terms, the statute did not cover his acts. (*Id.* at pp. 572, 573.)

In reaching this conclusion, *Cole* emphasized that the term "personally," as used in former section 12022.7, describes an act performed directly from one person to another. (*Cole, supra*, 31 Cal.3d 568, 572.) The court also relied on the apparent purpose of the statute to impose increased penalties on those perpetrators who do more than merely urge their confederates to inflict harm, and who actually inflict such harm. (*Id.* at pp. 572–573.) The court recognized that the defendant in *Cole*, who ordered the victim killed, was arguably as culpable as the accomplice who actually performed the attack. (*Id.* at p. 573.) But, according to *Cole*, the Legislature sought to deter persons from actually inflicting the prohibited harm by enhancing their punishment, and by not imposing the same penalty on persons who do not personally strike or injure the victim. (*Ibid.*) *Cole* further noted that other statutes supported this view. For instance, the rules that define aiders and abettors as principals in the commission of crimes, and that make those persons derivatively liable for crimes they do not personally commit, " 'do not at the same time impose a derivatively increased punishment by reason of the manner in which a confederate commits the crime.' " (*Id.* at p. 576; see § 31.)

Thus, *Cole* stands for the modest proposition that a defendant personally inflicts great bodily harm only if there is a direct physical link between his own act and the victim's injury. Under *Cole*, someone who does not strike or otherwise personally use force upon the victim does not qualify for enhanced punishment where the personal infliction of harm is required. As we have seen, CALJIC No. 17.20 follows this rule. However, consistent with the instruction, nothing in *Cole* precludes a person from receiving enhanced sentencing treatment where he joins others in actually beating and harming the victim, and where the precise manner in which he contributes to the victim's injuries cannot be measured or ascertained.

The Courts of Appeal have adhered closely to *Cole, supra*, 31 Cal.3d 568. Consistent with our view of the relevant statutory language here and in *Cole*, these decisions have provided for 20 years that participation in a group

attack may satisfy sections 1192.7(c)(8) and 12022.7(a) where the defendant personally uses force against the victim, and the precise injurious effect is unclear. Much like the group beating theories expressed in CALJIC No. 17.20, two themes emerge.

Some courts have upheld personal-infliction findings where the force personally used by the defendant during a group attack was serious enough that it may, *by itself*, have caused great bodily injury, even though the evidence did not show for certain that the defendant's acts alone perpetrated specific harm or that nobody else injured the victim. Under this approach, which is illustrated by *Corona, supra*, 213 Cal.App.3d 589, 594, "the blows were delivered, [the defendant] joined in that delivery and the victim suffered great bodily injury." (See *id.* at pp. 591–592, 594–595 [defendant joined other men in hitting and kicking victim, defendant threw unopened beer cans at victim, and victim suffered cuts and bruises on face and body]; accord, *People v. Banuelos* (2003) 106 Cal.App.4th 1332, 1334–1337 [131 Cal.Rptr.2d 639], review den. June 11, 2003 [defendant joined other men in punching victim, defendant struck victim on jaw and body with small bat, and victim suffered bruises, broken jaw and head wounds]; *In re Sergio R.* (1991) 228 Cal.App.3d 588, 593–594, 601–602 [279 Cal.Rptr. 149], review den. June 4, 1991 [defendant fired three shotgun rounds, accomplice fired own shotgun at same time, and two victims were struck].)

Other group beating cases permit a personal-infliction finding where the physical force the defendant and other persons applied to the victim at the same time *combined* to cause great bodily harm. One early example is *Dominick, supra*, 182 Cal.App.3d 1174, which involved a forcible restraint scenario not implicated in the present case. Critical here is *Dominick*'s reasoning, on which *Corona, supra*, 213 Cal.App.3d 589, in part relied, that the defendant's acts involved "more than aiding and abetting," and that he was "directly responsible" for the resulting injuries. (*Dominick, supra*, 182 Cal.App.3d at p. 1211; see *id.* at pp. 1185, 1210–1211 [defendant grabbed rape victim's arms and pulled her head back to allow accomplice to strike her throat with pole, causing victim to fall down hillside and break shoulder]; accord, *People v. Guzman* (2000) 77 Cal.App.4th 761, 763–764 [91 Cal.Rptr.2d 885], review den. Apr. 12, 2000 [defendant, while driving drunk, collided with oncoming traffic and injured passenger].)

Both lines of authority show that CALJIC No. 17.20—far from offending sections 1192.7(c)(8) and 12022.7(a)—prevents them from being rendered meaningless where more than one person perpetrates an attack. In such cases, the evidence is often conflicting or unclear as to which assailant caused particular injuries in whole or part. Thus, as CALJIC No. 17.20 recognizes, those who participate directly and substantially in a group beating

should not be immune from a personal-infliction finding for the sole reason that the resulting confusion prevents a showing or determination of this kind.

Defendant's contrary view would mean that "[o]nly those whose foot could be traced to a particular kick, whose fist could be patterned to a certain blow or whose weapon could be aligned with a visible injury would be punished. The more severe the beating, the more difficult would be the tracing of culpability." (*Corona, supra*, 213 Cal.App.3d 589, 594.) Under such circumstances, all participants in a group attack who personally caused or contributed to the infliction of harm could conceivably escape enhanced punishment. Given the apparent goal of deterring and punishing gratuitous violence, the drafters of sections 1192.7(c)(8) and 12022.7(a) could not have intended that result.

Here, after initially punching Schon in the face, defendant was seen in the group of 10 to 15 people who swarmed and beat Schon after he had been knocked down. The evidence suggested that defendant also struck Schon on the head with bottles during the melee (e.g., bloody hand/pants, LaBarbera admission, and thrown bottle). However, the violence initiated by defendant and escalated by the group prevented any evidence or determination whether defendant's blows were the exact ones that broke Schon's nose, cut his head, or caused other trauma. Under CALJIC No. 17.20, a personal-infliction finding could nonetheless be made if defendant personally applied force to the victim, and such force was sufficient to produce grievous bodily harm either alone or in concert with others. Thus, use of the instruction in the present case followed statutory law, as applied by the courts.

For reasons we now explain, the history of section 1192.7(c)(8) confirms that it embraces the group beating scenarios described in both the appellate decisions and CALJIC No. 17.20. These materials, which defendant and the present Court of Appeal have overlooked, undermine their contrary view.

Section 1192.7(c)(8) was enacted by the voters in 1982 as part of Proposition 8, also known as "The Victims' Bill of Rights." (Ballot Pamp., Primary Elec. (June 8, 1982) text of Prop. 8, § 7, p. 56 (Pamphlet).) Together, section 1192.7(c)(8) and section 667, which was enacted at the same time, established a sentencing enhancement for any defendant convicted of a serious felony who was previously convicted of a serious felony. (Pamphlet, *supra*, text of Prop. 8, § 5, p. 33.) As originally enacted, section 1192.7(c)(8) defined a serious felony as one in which the defendant either "inflicts great bodily injury" or "uses a firearm." (Pamphlet, *supra*, text of Prop. 8, § 7, p. 56, adding § 1192.7(c)(8).) The term "personally" appeared nowhere in the 1982 version of section 1192.7(c)(8).

Eventually, absence of the word "personally" to modify the conduct described in the 1982 version of section 1192.7(c)(8) caused some confusion in the courts. In *People v. Piper* (1986) 42 Cal.3d 471 [229 Cal.Rptr. 125, 722 P.2d 899] (*Piper*), for example, an issue arose whether a prior conviction of shooting at an occupied vehicle (see § 246) qualified as a serious felony under the 1982 version of section 1192.7(c)(8), where the record of conviction did not show that the defendant *personally* used a firearm. (*Piper, supra*, 42 Cal.3d at pp. 475–476.) The *Piper* court rejected any suggestion that such a qualification could not reasonably be implied, and interpreted the statute as requiring personal firearm use. (*Id.* at pp. 476, 478.) *Piper* relied, among other things, on the lack of any explicit statutory language imposing derivative punishment on someone who did not perform the proscribed act himself. (*Id.* at pp. 476–477.)

While *Piper, supra*, 42 Cal.3d 471, was pending, the Legislature sought to clarify the circumstances under which the 1982 version of section 1192.7(c)(8) applied. Hence, it amended the definition of a serious felony contained therein to include only those crimes in which the defendant "*personally* inflicts great bodily injury" or "*personally* uses a firearm." (§ 1192.7(c)(8), as amended by Stats. 1986, ch. 489, § 1, pp. 1808–1810 (1986 Amendment), italics added.) The Governor signed the bill on July 24, 1986. (Assem. Bill No. 3733, approved by Governor, July 24, 1986, 2 Assem. Final Hist. (1985–1986 Reg. Sess.) p. 2354.)

In limiting section 1192.7(c)(8) to defendants who "personally" inflict great bodily harm, the 1986 Amendment incorporated language that had existed in section 12022.7 since it became operative several years earlier. (See Stats. 1976, ch. 1139, § 306, p. 5162, operative July 1, 1977, as amended by Stats. 1977, ch. 165, § 94, p. 679, eff. June 29, 1977, operative July 1, 1977.) The history of the 1986 Amendment confirms that it was intended to "conform" the serious felony definition in former section 1192.7(c)(8) to the enhancement provision in former section 12022.7. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3733 (1985–1986 Reg. Sess.) as amended June 4, 1986, p. 2.) The purpose was to "correct drafting deficiencies" with respect to the *personal* infliction of bodily harm, and to "end any confusion caused by the differences in language." (*Ibid.*; accord, Assem. Pub. Safety Com., 3d reading analysis of Assem. Bill No. 3733 (1985–1986 Reg. Sess.) as amended June 4, 1986, pp. 1–2.)

In conforming section 1192.7(c)(8) to former section 12022.7, the Legislature appears to have accepted the judicial construction of the latter statute. As noted, that construction includes the principles that now appear in CALJIC No. 17.20 for determining when a participant in a group attack has personally inflicted great bodily harm. Two historical developments support this view.

First, as suggested earlier, *Dominick, supra,* 182 Cal.App.3d 1174, concluded that a defendant *personally* inflicts great bodily injury under section 12022.7, where he joins others in physically attacking the victim, and is "directly responsible," at least in substantial part, for the resulting harm. (*Dominick, supra,* at p. 1211.) *Dominick* was filed on June 30, 1986. At that time, the Legislature had not yet enacted the 1986 Amendment, which eventually added the word "personally" to section 1192.7(c)(8). (See Assem. Bill No. 3733 (1985–1986 Reg. Sess.), referred to Sen. Com. on Judiciary, June 12, 1986, and returned to Assem. on July 11, 2006, 2 Assem. Final Hist. (1985–1986 Reg. Sess.) p. 2354.)

We have found no evidence that lawmakers believed *Dominick, supra,* 182 Cal.App.3d 1174, wrongly construed the personal-infliction enhancement in former section 12022.7. The legislative record also fails to suggest that *Dominick* conflicted with the serious felony definition in section 1192.7(c)(8), as originally enacted. Indeed, we must assume that in reconciling the two statutes, the Legislature knew about *Dominick*'s approach to group attacks, and incorporated its view into the 1986 Amendment. (*People v. Harrison* (1989) 48 Cal.3d 321, 329 [256 Cal.Rptr. 401, 768 P.2d 1078] [presuming that where statutory amendment includes same language as earlier law on similar subject, and earlier law has been judicially construed, Legislature is aware of that construction and accepts it].)

Second, the Legislature has never repudiated *Dominick, supra,* 182 Cal.App.3d 1174, or its progeny, despite ample time and opportunity to do so. Since 1986, section 1192.7(c)(8) has been amended once, in 1998, to delete an extraneous term. (Stats. 1998, ch. 936, § 13 [deleting "other" preceding "felony" in statute].) In the interim, the courts had decided *Corona, supra,* 213 Cal.App.3d 589, and *In re Sergio R., supra,* 228 Cal.App.3d 588. Much like *Dominick,* these cases do not limit the personal infliction of bodily harm to group beatings or assaults in which the defendant was the sole or certain cause of specific grievous harm.

▮ In 1998, the Legislature did not amend the personal-infliction language in section 1192.7(c)(8) in response to these decisions. Nor has the Legislature since repudiated any of the other group beating cases that apply the principles now appearing in CALJIC No. 17.20. (See *People v. Banuelos, supra,* 106 Cal.App.4th 1332; *People v. Guzman, supra,* 77 Cal.App.4th 761.) This history suggests that the Legislature approves their construction of the statute, and that defendant's understanding of it is wrong. (*People v. Martinez* (1995) 11 Cal.4th 434, 446 [45 Cal.Rptr.2d 905, 903 P.2d 1037] [presuming that where statutory language has been judicially construed, and Legislature amends statute but leaves such language intact, it is aware of that construction and accepts it].)

Defendant nonetheless argues that CALJIC No. 17.20 offends section 1192.7(c)(8) in other ways. This claim involves certain words and phrases that, he insists, removed the personal-infliction requirement from the jury's consideration, and lowered the prosecution's burden of proof, in violation of federal and state due process guarantees. We address each point in turn.

Defendant starts with the instruction's first group beating theory. As noted, it involves "the application of unlawful physical force upon the victim" that "*could have caused*" great bodily injury "by itself." (CALJIC No. 17.20, italics added.) Defendant claims the italicized phrase invited speculation as to whether he personally inflicted harm, and permitted a section 1192.7(c)(8) finding based solely on injuries caused by other assailants in the group.

Read in context, however, the challenged language "is not reasonably susceptible" to this interpretation. (*People v. Jackson* (1996) 13 Cal.4th 1164, 1221–1222, fn. 11 [56 Cal.Rptr.2d 49, 920 P.2d 1254] [instruction on personal firearm use adequately advised jury to rely on defendant's own acts].) In deciding whether the section 1192.7(c)(8) allegation is true beyond a reasonable doubt, the jury is told that the defendant must have (1) participated in the group beating and (2) applied physical force directly to the victim, who (3) suffered great bodily injury as a result. As we have seen, the reference to grievous harm that the defendant "could have caused" on his own simply embraces the scenarios in which it is impossible to know which assailant caused a particular injury. By implication, this part of the instruction preserves the necessary causal link between the defendant's use of force and the victim's injuries by foreclosing a section 1192.7(c)(8) finding where the defendant could *not* have personally inflicted the requisite harm or contributed to it at all. No reasonable juror would have viewed the challenged language in the manner defendant suggests.[10]

Defendant also parses the second group beating theory. It allows the jury to sustain a section 1192.7(c)(8) allegation if the defendant "personally applied unlawful physical force" to the victim while he "*knew*" others were applying similar force at the same time, and while he "*knew, or reasonably should have known*, that the cumulative effect of all [such] force would result in

---

[10] Defendant also complains because the first group beating theory mentions "*the* application of unlawful physical force," instead of the *defendant*'s application of force. (CALJIC No. 17.20, italics added.) However, this language could not be understood as describing the acts of others. Both before and after the challenged phrase, CALJIC No. 17.20 asks jurors whether "*defendant*" personally inflicted great bodily injury or personally applied force to the victim. (Italics added.) Hence, the reference to "*the* application of unlawful physical force" logically describes defendant's own acts. (See *People v. Coddington* (2000) 23 Cal.4th 529, 594 [97 Cal.Rptr.2d 528, 2 P.3d 1081] [assuming jurors adopt commonsense meaning of instructions].) It did not excuse jurors from finding that he personally attacked and harmed the victim.

great bodily injury." (CALJIC No. 17.20, italics added.) According to defendant, the italicized language should not have appeared in the instruction, because it substituted his knowledge of the force applied by others for the injury that he was personally required to inflict. He claims this approach allowed "vicarious" liability under section 1192.7(c)(8) in violation of controlling law.

The asserted error did not occur. We have seen that section 1192.7(c)(8) requires the defendant to personally inflict, or contribute to the infliction of, great bodily harm while participating in a group attack. (See *Dominick, supra*, 182 Cal.App.3d 1174, 1210–1211.) The second group beating theory in CALJIC No. 17.20 follows this principle by requiring the defendant to apply physical force directly to the victim to such a significant degree that he adds to the "cumulative" injurious effect. Contrary to what defendant claims, this language does not define the defendant's personal infliction of great bodily harm primarily or solely in terms of the harmful acts that others in the group commit.

■■■ Moreover, we have said that section 1192.7(c)(8) simply requires an intent to do the act the statute proscribes. *(People v. Sargent* (1999) 19 Cal.4th 1206, 1222 [81 Cal.Rptr.2d 835, 970 P.2d 409] [describing § 1192.7(c)(8) as "general intent" statute], citing *People v. Gonzales, supra*, 29 Cal.App.4th 1684, 1695–1698.)[11] Instead of supplanting the personal-infliction requirement, the reference to what the defendant knew or should have known during the attack arguably imposes an additional evidentiary burden on the prosecution. We see no basis on which defendant can complain.[12]

### CONCLUSION

We conclude the Court of Appeal erred in determining that the second group beating theory in CALJIC No. 17.20 is invalid, and that the instruction

---

[11] Voters recently rejected an attempt to amend section 1192.7(c)(8) to include a requirement that the defendant "specifically intend[] to" personally inflict great bodily injury. (Text of Prop. 66, proposing amend. of § 1192.7(c)(8) at Gen. Elec. (Nov. 2, 2004) 50D West's Ann. Pen. Code (2005 supp.) foll. § 1192.7, p. 3; see Historical and Statutory Notes, 50D West's Ann. Pen. Code (2006 supp.) foll. § 1192.7, p. 4 [noting rejection of amendment to this section].) The Legislature long ago removed from section 12022.7(a) a similar requirement that great bodily injury be personally inflicted "with the intent to inflict the injury." (Stats. 1995, ch. 341, § 1, p. 1851.)

[12] Defendant argues on review, as on appeal, that CALJIC No. 17.20 tainted *both* the finding that he personally inflicted great bodily harm (§ 1192.7(c)(8)) and that he personally used a dangerous and deadly weapon. (§ 1192.7(c)(23).) He also complains here about the harmless error analysis the Court of Appeal used to uphold the latter finding. Our conclusions that the group beating principles in CALJIC No. 17.20 are valid and that the instruction was properly given at trial foreclose any claim that such principles wrongly infected the personal-use finding. Hence, we do not address the issue.

should not have been given at defendant's trial. The judgment of the Court of Appeal is reversed insofar as it vacated the section 1192.7(c)(8) finding that defendant personally inflicted great bodily injury in the commission of felony assault, and the matter is remanded to the Court of Appeal with directions to consider, in a manner not inconsistent with the views expressed in this opinion, defendant's argument that the trial court erred in responding to the jury's request during deliberations for "clarification of 'personal' " as used in section 1192.7(c)(8) and CALJIC No. 17.20.

George, C. J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.

**WERDEGAR, J.,** Concurring.—I agree with the majority that CALJIC No. 17.20 does not misstate the law regarding allegations of personal infliction of great bodily injury. I also agree the trial court did not err by giving the instruction in this case, where the evidence showed defendant participated in a group attack and personally struck the victim with blows the jury could find caused his injuries, either by themselves or together with the blows of his coassailants. I do not understand the majority's discussion of *People v. Dominick* (1986) 182 Cal.App.3d 1174 [227 Cal.Rptr. 849] to constitute approval of the application of personal-infliction enhancements in cases where (as in *Dominick*) the defendant's role was limited to restraining the victim while a coassailant struck her (a factual scenario the majority correctly notes is "not implicated" here (maj. opn., *ante*, at p. 496)), but only as endorsing the general principle that direct participants in group attacks are not immune from personal-infliction findings. On that basis I have signed the majority opinion.

**KENNARD, J.,** Dissenting.—I do not agree with the majority that the trial court here correctly instructed the jury on what is required, in a group beating context, for a finding under Penal Code section 1192.7, subdivision (c)(8), that a defendant personally inflicted great bodily injury. The instruction that the trial court read to the jury, CALJIC No. 17.20, presented two alternative theories under which the jury could find that defendant personally inflicted great bodily injury. As defendant persuasively argues, neither theory is correct. I agree with the Court of Appeal that the instruction was erroneous and that the error was prejudicial. Accordingly, I would affirm the Court of Appeal's judgment setting aside the great bodily injury finding.

The majority correctly explains what is required for a finding that a defendant personally inflicted great bodily injury in a group beating context. The defendant must do more than merely aid or abet others who inflict great bodily injury; the defendant must physically participate' in the injury-producing conduct. On the other hand, the defendant need not have acted alone, and his conduct need not be the sole or even the predominate cause of the great bodily injury. The defendant's physical participation need only be a

substantial factor in producing the great bodily injury, or, in other words, the effect of the defendant's conduct in producing the injury must be more than trivial or insignificant.

The trial court, however, did not accurately explain these requirements to the jury. The trial court gave this explanation: "When a person participates in a group beating and it is not possible to determine which assailant inflicted a particular injury, he or she may be found to have personally inflicted great bodily injury upon the victim, if one, the application of unlawful physical force upon the victim was of such a nature that, by itself, it could have caused the great bodily injury suffered by the victim; *or two*, that at the time that the defendant personally applied unlawful physical force to the victim, the defendant knew that other persons, as part of the same incident, had applied, were applying, or would apply unlawful physical force upon the victim and the defendant then knew or reasonably should have known that the cumulative effect of all the unlawful physical force would result in great bodily injury to the victim." (Italics added.)

There was no need or justification for a jury instruction setting forth two theories. The majority succinctly summarizes the statute's requirements in these terms: "[T]he statute calls for the defendant to administer a blow or other force to the victim, for the defendant to do so directly rather than through an intermediary, and for the victim to suffer great bodily injury as a result." (Maj. opn., *ante*, at p. 493.) The majority adds the necessary qualification that the defendant's conduct must "contribute substantially to the victim's injured state." (*Id.* at p. 494.) An instruction in these terms would have been accurate and sufficient.

The instruction's first theory is that a defendant personally inflicts great bodily injury if "the application of unlawful physical force upon the victim was of such a nature that, by itself, it *could have caused* the great bodily injury suffered by the victim." (Italics added.) The majority concludes that the jury would have understood that the words " 'application of unlawful physical force' " referred to defendant's own acts. (Maj. opn., *ante*, at p. 500, fn. 10.) Although this is questionable, the more serious defect in the instruction is its use of the words "could have caused."

When we say that someone "could have" done something, we mean only that the person had the ability or potential to do that thing. We do not mean that the person actually did the thing, and often we mean the opposite. For example, in the film On the Waterfront (Columbia Pictures 1954), a former boxer portrayed by the actor Marlon Brando famously said: "I could have been a contender. I could have been somebody, instead of a bum—which is what I am." With these words, the former boxer was expressing regret that he had *never* been a contender.

Thus, to say that the defendant's application of physical force "could have" caused the victim's great bodily injury is only to say that it had the capacity or potential to cause such an injury, even though it may not actually have done so. This is not a correct description of what must be proved to support a finding of personal infliction of great bodily injury under Penal Code section 1192.7, subdivision (c)(8). The defendant's force must actually have caused the great bodily injury in the sense that it contributed to the injury in a nontrivial way.

The instruction's other theory is also wrong. The second theory is that a defendant personally inflicts great bodily injury if "at the time that the defendant personally applied unlawful physical force to the victim, the defendant knew that other persons, as part of the same incident, had applied, were applying, or would apply unlawful physical force upon the victim and the defendant then knew or reasonably should have known that the cumulative effect of all the unlawful physical force would result in great bodily injury to the victim." In addition to the defendant's application of force to the victim, this theory imposes two requirements: (1) the defendant must have known that others are also beating the victim; and (2) the defendant must have known that the cumulative effect of all the blows would result in great bodily injury. The second requirement includes within it a requirement that the cumulative effect of all the blows in fact results in great bodily injury.

As the majority cautiously observes, "the reference to what the defendant knew or should have known during the attack arguably imposes an additional evidentiary burden on the prosecution." (Maj. opn., *ante*, at p. 501.) Although this aspect of the instruction's second theory (the imposition of knowledge requirements) is almost certainly erroneous, it is not the aspect that misled the jury to defendant's prejudice. Defendant was harmed by the instruction's second theory insofar as it stated or implied that the causation requirement for a finding of personal infliction of great bodily injury may be satisfied by proof that defendant "personally applied unlawful physical force to the victim" during an incident in which others were also beating the victim and that "the cumulative effect of all the unlawful physical force . . . result[ed] in great bodily injury to the victim."

What the instruction should have explained, but did not, is that when an injury results from the cumulative effect of multiple blows, the defendant has personally inflicted that injury if, but only if, the blow or blows struck by the defendant were a substantial factor in causing the injury. (See *People v. Catlin* (2001) 26 Cal.4th 81, 155–156 [109 Cal.Rptr.2d 31, 26 P.3d 357]; *In re M.S.* (1995) 10 Cal.4th 698, 719–720 [42 Cal.Rptr.2d 355, 896 P.2d 1365].) The "substantial factor" test is explained in a standard Judicial Council jury instruction. As adapted to the situation here, the instruction reads: "There

may be more than one cause of [great bodily injury]. An act causes [great bodily injury] only if it is a substantial factor in causing the [injury]. A substantial factor is more than a trivial or remote factor. However, it does not have to be the only factor that causes the [injury]." (See Judicial Council of Cal. Crim. Jury Instns. (2006) CALCRIM No. 240; see also CALJIC No. 3.41.) The instruction's second theory is erroneous because it does not explain the "substantial factor" requirement, that the defendant's own conduct be more than a trivial or remote factor in causing the great bodily injury. A finding that the cumulative effect of multiple blows from different individuals resulted in great bodily injury does not exclude the possibility that the blow or blows inflicted by one of those individuals were only a trivial factor and did not contribute substantially in producing the injury.

The majority's defense of the instruction is unpersuasive. In response to defendant's argument that the instruction's first theory—that defendant's application of force "could have caused" the injury—"invited speculation as to whether he personally inflicted harm" and permitted a finding "based solely on injuries caused by other assailants in the group," the majority asserts that the instruction told the jury "that the defendant must have (1) participated in the group beating and (2) applied physical force directly to the victim, who (3) suffered great bodily injury *as a result*." (Maj. opn., *ante*, at p. 500, italics added.) But the instruction does not state that the victim must have suffered bodily injury "as a result" of the physical force that defendant applied. The instruction's first theory does not require that the victim suffer *any* injury as a result of the defendant's use of force. The instruction's only reference to the victim's injury being a "result" of physical force is in its description of the second theory, and there the instruction referred to the injury being the result of the "cumulative effect" of the physical force applied by *all* participants, not by the defendant. Thus, in asserting that the instruction required the jury to find that the victim suffered great bodily injury "as a result" of the physical force that defendant applied, the majority reads into the instruction a concept that simply is not there.

In response to defendant's argument that the instruction's second theory is defective because it "substituted his knowledge of the force applied by others for the injury that he was personally required to inflict" (maj. opn., *ante*, at p. 501), the majority asserts that the instruction "requir[es] the defendant to apply physical force directly to the victim to such a significant degree that he adds to the 'cumulative' injurious effect" (*id.* at p. 501). Here also, the majority claims to find in the instruction a concept that it nowhere expresses. Nothing in the instruction required the jury to assess defendant's contribution to the cumulative effect of the multiple blows for the purpose of determining whether it was more than a trivial or insubstantial factor in producing the injury.

Given the sharply conflicting evidence in this case, the instruction's failure to explain the substantial factor causation requirement resulted in prejudice to defendant, requiring reversal of the finding under Penal Code section 1192.7, subdivision (c)(8), that defendant personally inflicted great bodily injury. Because the Court of Appeal correctly resolved this issue, I would affirm its judgment.

Appellant's petition for a rehearing was denied September 20, 2006, and the opinion was modified to read as printed above. Kennard, J., was of the opinion that the petition should be granted.