Filed 3/20/26  P. v. Salas CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JASON SALAS<br><br>    Defendant and Appellant. | H052760<br>(Santa Clara County<br> Super. Ct. No. C2310365) |

In connection with a violent fight in a park in San José, Jason Salas was convicted of three crimes: battery, assault with a deadly weapon, and assault with force likely to produce great bodily injury.  The trial court suspended imposition of sentence and placed Salas on probation for three years.

Salas appealed, and we appointed counsel to represent him.  Counsel filed an opening brief stating the case and the facts.  In addition, while counsel identified three issues for consideration, she did not challenge Salas' conviction.  We advised Salas of his right to file written argument on his own behalf, but received no response.

We have reviewed the full appellate record pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).  (See also *People v. Kelly* (2006) 40 Cal.4th 106 (*Kelly*).)  In so doing, we exercise our discretion to examine the three issues identified by appellate

counsel. (See *People v. Kent* (2014) 229 Cal.App.4th 293.) As explained below, we conclude that there is no arguable issue for appeal and affirm the judgment.

## I. BACKGROUND

### A. The Underlying Incident

Around 11:00 p.m. on June 22, 2021, Salas was with several friends in a park, attending a vigil for a close friend who had been murdered. Everyone attending the vigil was around 20 years old, and all had attended the same high school.

Juan Rodriguez was in the park at the same time. He was celebrating his 43rd birthday by walking through the park drinking alcohol and had previously used methamphetamine. Rodriguez also carried a four-foot-long shovel.

Rodriguez approached the picnic table where Salas and his companions had set up candles and a picture of their deceased friend. Salas cautioned Rodriguez to be careful around the memorial display. Rodriguez responded dismissively, claiming that "this is my block."

Salas told Rodriguez to leave, but Rodriguez refused. Instead, Rodriguez exchanged threats and insults with Salas and several other young men, and when the confrontation grew more acrimonious, Salas suggested Rodriguez put the shovel down and fight without it. Salas and several of his friends then surrounded Rodriguez, who flailed at them with the shovel but failed to connect.

Rodriguez pulled out a knife, possibly after someone in Salas' group pulled out his own knife. Then Rodriguez began to run away, but the group pursued him. They took the shovel and the knife from Rodriguez, knocked him to the ground, and beat him.

When the group stopped beating Rodriguez, he was curled into a fetal position, hands covering his head. Salas then hit Rodriguez several times with the shovel before leaving with his friends.

2

Rodriguez suffered extensive injuries. He had a broken rib, a broken septum, and tissue damage to his scalp, face, neck, back, one ear, and one arm. His right lung was partially collapsed. And two fingers were so severely fractured and lacerated that he permanently lost some function in both.

For his part, Salas went to the emergency room the day after the assault for a puncture in his chest.

## B. The Charges

Salas was arrested in August 2023. Eventually, he was charged by information with three offenses: (1) mayhem (Pen. Code, § 203); (2) assault with a deadly weapon (*id.*, § 245, subd. (a)(1)); and (3) assault by means likely to cause great bodily injury (*id.*, § 245, subd. (a)(4)). (Subsequent undesignated statutory references are to the Penal Code.) In connection with the assault counts, the information alleged Salas personally inflicted great bodily injury. (§ 12022.7, subd. (a).)

## C. The Trial

In April 2024, the case went to trial, which lasted six days. The prosecutor presented testimony from Rodriguez, numerous participants in the vigil for Salas' friend, as well as several bystanders, police officers, and forensic investigators.

The jury acquitted Salas of mayhem but found him guilty of the lesser included offense of simple battery under section 242. The jury also found Salas guilty on both assault counts and found true the related enhancements for inflicting great bodily injury.

## D. The Sentence

The court suspended imposition of sentence and placed Salas on three years of felony probation under section 1203.1, subdivision (*l*)(1) and section 667.5, subdivision (c)(8). As a condition of probation, the court ordered Salas to serve 90 days in county jail, with credit for six days of custody and six days of good time. The court waived a restitution fine and two fees.

Salas filed a timely notice of appeal.

## II. DISCUSSION

We have reviewed the entire record under *Wende*, *supra*, 25 Cal.3d 436, and *Kelly*, *supra*, 40 Cal.4th 106, including the three issues suggested by counsel. This review disclosed no arguable issue on appeal, and therefore we conclude that appellate counsel has complied fully with her responsibilities. (*Wende*, at p. 441.)

### A. Instruction on Great Bodily Injury

Counsel suggests that the trial court may have erred in instructing the jury on the great bodily injury enhancement. In particular, counsel notes that the instruction concerning group assaults used by the trial court, CALCRIM No. 3160, contains an alternative element—that "[t]he amount or type of physical force the defendant used on [the victim] was enough that it alone could have caused [the victim] to suffer great bodily injury" (2 CALCRIM No. 3160 (2024 ed.), p. 873)—that Justice Kennard questioned. (See *People v. Modiri* (2006) 39 Cal.4th 481, 503-504 (dis. opn. of Kennard, J.) (*Modiri*).) In fact, the trial court instructed the jury on the other alternative for this element, which does not implicate the concerns raised by Justice Kennard.

CALCRIM No. 3160 instructs juries that, where there is a group assault, a jury may conclude that a defendant inflicted great bodily injury if three elements are satisfied. (2 CALCRIM No. 3160 (2024 ed.), p. 873.) The first two elements are "1. Two or more people, acting at the same time, assaulted [victim] and inflicted great bodily injury on (him/her); [¶] 2. The defendant personally used physical force on [victim] during the group assault . . . ." (*Ibid*.) The instruction provides two alternatives (in brackets) for the third element: "[3A. The amount or type of physical force the defendant used on [victim] was enough that it could have caused [victim] to suffer great bodily injury(;/.)] [¶] [OR] [¶] [3B. The physical force that the defendant used on [victim] was sufficient in

4

combination with the force used by the others to cause [victim] to suffer great bodily injury.]." (*Id*. pp. 873-874.)

In this case, the trial court used the second, not the first, alternative for CALCRIM No. 3160's third element. "If you conclude that more than one person assaulted Juan Rodriguez and you cannot decide which person caused which injury, you may conclude that the defendant personally inflicted great bodily injury on Juan Rodriguez if the People have proved that: [¶] "Number one. Two or more people, acting at the same time, assaulted Juan Rodriguez and inflicted great bodily injury on him. [¶] And number two, the defendant personally used physical force on Juan Rodriguez during the group assault. [¶] Number three. *The physical force that the defendant used on Juan Rodriguez was sufficient, in combination with the force used by the others, to cause Juan Rodriguez to suffer great bodily injury*." (Italics added.) Thus, contrary to counsel's suggestion, the jury was not instructed that it could find true the great bodily injury enhancement because Salas applied force that "could have" caused Juan Rodriguez great bodily injury. Instead, the jury was instructed that it could find the enhancement true if Salas used force that was sufficient, in combination with that of others, to cause such injury.

Justice Kennard criticized the alternative *not* given the jury because, in her view, the great bodily injury enhancement requires the defendant to have applied force that "actually . . . caused the great bodily injury in the sense that it contributed to the injury in a nontrivial way." (*Modiri*, *supra*, 39 Cal.4th at p. 504 (dis. op. of Kennard, J.).) Finding only that the defendant's action "had the capacity or potential to cause such an injury," Justice Kennard argued, was not enough "to support a finding of personal infliction of great bodily injury." (*Ibid*.) The alternative element on which the trial court actually instructed the jury does not suffer from this defect because it requires that the defendant used force that was sufficient in combination with the forced used by others to cause Rodriguez's injury. Moreover, we see no other defect in this alternative.

5

Accordingly, we conclude that Salas has no reasonable basis for challenging the great bodily injury enhancement instruction actually given the jury.

## B. Admission of Enhanced Video

Counsel also suggests that the trial court may have erred by admitting enhanced clips from surveillance videos. The videos were obtained from an individual who lives across from the park and has cameras aimed at the front of his home that cover part of the park as well. Over Salas' objections, the prosecutor was allowed to play enhanced clips that were lightened, colorized, and zoomed in, with markers added to indicate Salas and Rodriguez. Although counsel notes that trial counsel asserted a need for an expert to determine "if the enhancements were legitimate," she does not suggest any grounds on which the clips might have been excluded. Even more important, counsel fails to suggest how the enhancements to the video might have prejudiced Salas. It is well-settled that a conviction may be reversed due to the erroneous admission of evidence only if that error caused a miscarriage of justice. (Evid. Code, § 353, subd. (b).) As a consequence, even if the enhanced clips were somehow inadmissible, we see no reasonable basis for arguing that their admission caused a miscarriage warranting reversal.

## C. Sufficiency of the Evidence

Finally, counsel notes the trial court's observations that this was "a very close case" that could "could have come back either guilty or not guilty" and that Salas moved for both dismissal for insufficiency of the evidence or, alternatively, a new trial. Here again, we find no reasonable basis for appeal.

In seeking dismissal based on insufficient evidence, Salas did not point out any defects in the evidence presented by the prosecution. He merely asserted that Rodriguez "introduced deadly force and used deadly force numerous times" and that this justified Salas' use of lethal force in response. However, he offered no reason why the evidence in the record compelled the jury to find his actions justified. Similarly, on appeal counsel

6

notes evidence supporting the defense: Rodriguez brought two weapons (a shovel and a knife) to the vigil, responded aggressively to Salas' request to take care, uttered threats and offered to fight Salas one-on-one, swung the shovel first, pulled out a knife, and may have stabbed Salas. As the trial court noted, the jury might have credited this evidence and decided to acquit Salas based on based on it. However, in determining whether the evidence in the record was sufficient to support conviction, we view the evidence in the record in the light most favorable to the conviction, presuming in support of the judgment every fact the factfinder could have reasonably deduced. (*People v. Smith* (2005) 37 Cal.4th 733, 736.) Here, the jury reasonably could have found that Salas did not act in justified self-defense, and was guilty of the crimes charged, because he participated in a group beating of Rodriguez as Rodriguez lay curled up on the ground and then, by himself, hit Rodriguez repeatedly with a shovel. As a consequence, there is no reasonable basis for arguing on appeal that the evidence of Rodriguez's guilt was insufficient.

Nor is there any arguable basis for contending that the trial court abused its discretion in failing to order a new trial. "A trial court has broad discretion in ruling on a motion for a new trail, and there is a strong presumption that it properly exercised that discretion." (*People v. Davis* (1995) 10 Cal.4th 463, 524.) Indeed, " ' " '[t]he determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears.' " ' " (*People v. Fuiava* (2012) 53 Cal.4th 622, 650.) Although, as noted above, the trial court found that this was a close case that could have come out a different way, we see no reasonable basis for arguing that the failure to order a new trial here was a manifest and unmistakable abuse of discretion.

### III. Disposition

The judgment is affirmed.

_____
BROMBERG, J.

WE CONCUR:



_____
GREENWOOD, P. J.



_____
DANNER, J.



*People v. Salas*
H052760