Filed 5/14/13  P. v. Esparza CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ISRAEL RUDY ESPARZA,<br><br>    Defendant and Appellant. | 2d Crim. No. B238691<br>(Super. Ct. No. 2011026945)<br>(Ventura County) |

Israel Rudy Esparza appeals from a judgment after conviction by jury of attempted murder of Reynaldo Munoz (§§ 664, 187, subd. (a)),[1] assault with a deadly weapon upon Munoz (§ 245, subd. (a)(1)), and street terrorism (§ 186.22, subd. (a)).  The jury found true allegations that all three crimes resulted in great bodily injury (§ 12022.7), and that the attempted murder and assault were committed on behalf of the Varrio Simi Valley (VSV) criminal street gang (§ 186.22, subd. (b)(1)).  The jury found not true an allegation that Esparza personally used a knife.  The trial court sentenced Esparza to 18 years in state prison.

Esparza does not dispute that VSV gang members beat and stabbed Munoz and he does not dispute that he was present.  But he contends there is no substantial evidence that he was either a direct perpetrator or an aider and abettor in the crimes

_____

[1] All statutory references are to the Penal Code unless otherwise stated.

because the testimony of his accomplice, Robert Lara, was not sufficiently corroborated by independent evidence tending to connect him with the crimes and there was no evidence he was an active participant in VSV at the time. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

VSV and Moorpark Locos (MPLS) are rival gangs. Munoz was a member of MPLS.

On May 10, 2009, Gabriel Hernandez, a VSV member, hosted a barbeque at his home. Esparza attended, as did many members and associates of VSV. Esparza was not known to be a VSV member at that time. Witnesses testified that Esparza was "jumped into" the gang about two months later, but had been "hanging out a lot" with the gang.

Munoz was severely beaten in a parking lot across the street from the barbeque, after he challenged VSV members and associates to a fight. Munoz suffered 14 stab wounds to his face, head, and torso and a collapsed lung.

A surveillance video (video) of the parking lot shows that Esparza was present immediately before and after the fight. The fight occurred just outside the camera's view. An impartial witness saw the group of men beating Munoz from a passing car, but could not identify the participants.

VSV members Turk Rangel, James Hodgkins, Gabriel Hernandez, Michael Roman, and Esparza's brother (Efran) each pled guilty to attempted murder with personal infliction of great bodily harm and personal use of a deadly weapon. They each admitted a gang enhancement. Hodgkins and Rangel admitted they used knives to attack Munoz; Hernandez admitted he used a machete; Efran admitted he used a baseball bat; and Roman admitted he used a shovel.

The video first shows Rangel, Hodgkins, Lara, and Angela Kemps gather in the parking lot. As they stand together, Munoz drives his truck into the parking lot towards the group. Rangel strikes the hood of the truck and Rangel and Hodgkins walk up to Munoz's driver's side window. Lara testified that at this point Rangel and Hodgkins said, "VSV," among other things, and Munoz said, "MPLS." Kemps testified she heard

2

Rangel and Hodgkins say, "fuck Moorpark.  VSV.  Let's get down.  Get down now.  Get out of the car.  We'll do it here."

The video shows Munoz driving away from the men and parking nearby.  Hodgkins removes his shirt, drops something, and picks it up.  Lara testified it was a knife.  The video shows Munoz pull a shovel out of the back of his truck and run back toward Hodgkins, waving it at him.  Hodgkins moves toward Munoz.  A group of VSV men arrive behind Hodgkins from across the street and Munoz backs up.

The first to arrive is Esparza.  Roman and Hernandez follow.  About 30 seconds have elapsed since Munoz parked his truck.  There are now six men facing Munoz.

The video shows Esparza move quickly toward Munoz, with both arms raised from his sides.  The rest of the VSV group then rush in.  Lara testified that Esparza's gesture meant, "Do we have a problem?"  Lara told a detective that Esparza said, "What's going on?" to Munoz, or "What's up?"

Munoz immediately backs out of view of the surveillance camera and the VSV group runs after him.  Esparza's brother, Efran, joins the group and also moves out of view.  According to Lara, Munoz hit Esparza in the head with the shovel.  Esparza "brought down Munoz with him."

Lara testified the VSV group then attacked Munoz with knives, a baseball bat, a machete, and the shovel, and continued to attack him after he had fallen to the ground.  "[E]verybody . . . started attacking Munoz."  They were "socking and kicking the guy."  Esparza stabbed Munoz more than once in the face during the fight, after Munoz was on the ground.

Within one minute, the VSV group reappears on the video and disperses.  The first to leave is Hernandez, followed by Esparza and Hodgkins, then Roman, Lara, Efran, and Rangel.  After the VSV group is gone, Munoz staggers into view and collapses.

Kemps, Lara, and Munoz testified at trial.  Munoz did not identify Esparza.  He said he did not know the people who attacked him and had never heard of VSV.

3

Kemps testified that she left the parking lot as the VSV group started to attack Munoz and did not see Esparza stab Munoz. When she left, she went back to a VSV barbeque across the street and told the people there a fight was "going to happen" across the street. She said all the women at the party were family or girlfriends of VSV members and associates. She saw Hernandez, Roman, Esparza and Efran run from the barbeque toward the parking lot. She said that members of VSV are expected to join a fight against a rival gang member.

Kemps and Lara both testified that Esparza was "jumped" into the VSV gang about two weeks after the attack. Photographs taken about two months after the attack were admitted and show Esparza with the other participants, making "VSV" and Mexican Mafia gang hand signs.

In exchange for their testimony, Kemps and Lara expected favorable resolution of the charges against them. Lara did not implicate Esparza in his first statement to a detective. At trial, he said he was trying to protect Esparza, his uncle.

Simi Valley Police Detective Kevin Van Fleet testified that VSV is a criminal street gang. Van Fleet described its pattern of criminal activity, including predicate felony convictions of VSV members. He offered the opinion that everyone who participated in the attack on Munoz was an active participant of VSV on May 10, 2009. His opinion about Esparza was based on Kemp's statement to him that Esparza "hung around" the gang, and became "an associate" afterward; Lara's statement to him that Esparza is a member of VSV with a moniker of "Frisky" or "Risky"; the statement of a VSV informant who clarified that Esparza's moniker is "Risky"; and the fact that VSV members allowed Esparza to be photographed with them. Detective Van Fleet said the photographs, taken so soon after the crimes, showed that Esparza had "put in some work" for the gang, and been an "active participant of VSV for longer than the two months that have transpired" since the attack on Munoz. He said, "He's not just some new member of the gang that's coming in and being allowed to hang out with the older subjects and take photos with them." Detective Van Fleet did not know of any gang crimes or contact

4

involving Esparza prior to May 10, 2009. The photographs were found six months after the crimes; two were date stamped July 4, 2009.

Ventura County Sheriff's Detective Cesar Salas also described VSV's pattern of criminal activity. He said that a gang will not allow an unaffiliated person to join in a fight because they cannot be trusted not to talk to law enforcement about it. He said that gang members are expected to join an attack on a rival even if the rival is outnumbered. He said that a person can raise his position in a gang by supporting a shot caller in a fight.

DISCUSSION

Esparza contends there is no sufficient evidence to support his convictions for attempted murder, assault with a deadly weapon, street terrorism, or the great bodily injury enhancement because the testimony of Lara was not sufficiently corroborated and there is no evidence he was an active participant of VSV on May 10, 2009. He also points out that the jury found not true the allegation that he personally used a knife.

We view the evidence in the light most favorable to the judgment and presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People v. Smith* (2005) 37 Cal.4th 733, 739.) Substantial evidence in the record supports the judgment.

*Attempted Murder and Assault with a Deadly Weapon*

The conviction for attempted murder required proof that Esparza intended to kill Munoz and took a direct but ineffectual act toward accomplishing the killing (*People v. Smith, supra,* 37 Cal.4th at p. 739) or, under an aiding and abetting theory, proof that he gave aid or encouragement to one of his companions with knowledge of their intent to kill Munoz and with the purpose of facilitating accomplishment of the intended killing. (*People v. Lee* (2003) 31 Cal.4th 613, 624.) The conviction for assault with a deadly weapon required proof that Esparza personally used a deadly weapon in the assault or, under an aiding and abetting theory, that he knew of his companions' intent to use a deadly weapon in the assault, and aided or encouraged them with intent to facilitate the offense. (*People v. Beeman* (1984) 35 Cal.3d 547, 560.)

5

Esparza concedes that Hodgkins, Rangel, Hernandez, Roman, and Efran beat and stabbed Munoz with deadly weapons and that he was present. The parties stipulated that these men confessed to attempted murder, personal infliction of great bodily injury, and use of deadly weapon. The brutality of the attack and the nature of Munoz's injuries support an inference that Munoz's attackers intended to kill him. (*People v. Osband* (1996) 13 Cal.4th 622, 692.) Lara's testimony provides evidence that Esparza was one of the attackers. Lara testified that Esparza participated directly in, and aided and encouraged, the attempted murder and the assault when he "brought Munoz down with him," stabbing Munoz in the face, and when "everybody . . . started attacking Munoz."

While the jury found that Esparza did not personally use a knife, Lara testified that Esparza had other direct contact with the victim. Moreover, "[a]n inconsistency may show no more than jury lenity, compromise, or mistake, none of which undermines the validity of the verdict." (*People v. Lewis* (2001) 25 Cal.4th 610, 656.) Even if Esparza did not stab Munoz, the jury could find that he aided, encouraged and facilitated the attack on Munoz when he led his companions, who were armed with knives, a baseball bat, and other weapons, into the attack, when he took Munoz to the ground, and when he kicked and "socked," him after he was on the ground.

Lara was Esparza's accomplice. A conviction cannot be based on the uncorroborated testimony of an accomplice. (§ 1111.) The corroborating evidence must not require explanation from the accomplice and must "*tend directly and immediately* to connect the defendant with the offense charged against him." (*People v Reingold* (1948) 87 Cal.App.2d 382, 393.) It must do more than cast grave suspicion on the accused. (*Ibid.*) It must tend to connect the defendant "with the crime itself, and not simply with its perpetrators." (*Id.* at p. 400.)

Lara's testimony is sufficiently corroborated by the video, which shows Esparza leading the VSV group into the attack. The video does more than connect Esparza with the perpetrators. It shows him moving aggressively toward the victim, leading the other VSV members into the assault. He is out of view for less than a minute

6

before the group reemerges, leaving behind the brutally beaten Munoz. The video tends to directly link Esparza with the crimes. This evidence, combined with Munoz's injuries, the guilty pleas of Esparza's companions, the testimony of Kemps and the gang expert about the motivations to participate in gang fight, and the photograph showing Esparza making gang hand signs with the other participants shortly after the crimes, all support a reasonable inference that Esparza participated in the attack with the intent to kill Munoz and that he either directly committed, or aided and abetted in, the assault with a deadly weapon.

*Personal Infliction of Great Bodily Injury*

The evidence is sufficient to support the finding that Esparza personally inflicted great bodily injury on Munoz. A great bodily injury enhancement will be upheld "where the defendant physically joins a group attack, and directly applies force to the victim sufficient to inflict, or contributes to the infliction of, great bodily harm. . . . [T]he defendant need not be the sole or definite cause of a specific injury." (*People v. Modiri* (2006) 39 Cal.4th 481, 486.) Here, Lara testified that Esparza directly applied force to the victim sufficient to inflict or contribute to his injuries when he stabbed him, and when he "brought Munoz down," and when he, along with the rest of the group, socked and kicked Munoz.

*Street Terrorism*

Esparza contends there is not sufficient evidence that he was an active participant in VSV at the time of the crimes to support the street terrorism conviction because the prosecution's gang expert did not have any evidence that Esparza became a member of VSV until after the crimes were committed.

Section 186.22, subdivision (a), street terrorism, does not require proof of actual membership at the time of the crimes; it requires active participation. The elements of the offense are (1) active participation in a criminal street gang that is "more than nominal or passive"; (2) knowledge that the gang's member engage in a pattern of criminal gang activity; and (3) willful promotion, furtherance, or assistance in any felonious criminal conduct by members of the gang. (*People v. Albillar* (2010) 51

7

Cal.4th 47, 56.) "[I]t is not necessary for the prosecution to prove that the person devotes all, or a substantial part, of his or her time or efforts to the criminal street gang, nor is it necessary to prove that the person is a member of the criminal street gang. Active participation in the criminal street gang is all that is required." (§ 186.22, subd. (i).)

Evidence showed that Esparza was attending a barbeque with VSV gang members. He ran across the street with VSV gang members and associates to join other VSV members who were confronting a rival gang member. The prosecution's gang expert testified that gang members will not allow an unaffiliated person to join a fight with a rival. The testimony of Lara and Kemps that Esparza was "jumped" into the gang soon after the crimes, and the photographs of Esparza making gang hand signs with known VSV gang members within months of the crime support an inference that the gang rewarded him with membership for the work he put in for VSV during the attack on Munoz. That work constituted active participation sufficient to support the conviction for street terrorism.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.


We concur:


YEGAN, J.


PERREN, J.

8

James P. Cloninger, Judge

Superior Court County of Ventura

_____

Linda C. Rush, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Linda C. Johnson, Supervising Deputy Attorney General, Michael Katz, David F. Glassman Deputy Attorneys General, for Plaintiff and Respondent.